FILED UNDER SEAL

CONTAINS INFORMATION DESIGNATED AS "CONFIDENTIAL" PURSUANT TO PROTECTIVE ORDER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| E.I. DU PONT DE NEMOURS AND COMPANY,<br><br>                Plaintiff,<br><br>      v.<br><br>KOLON INDUSTRIES, INC.,<br><br>                Defendant. | 12 Misc. 120 |

**PLAINTIFF JUDGMENT CREDITOR'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR TURNOVER ORDER PURSUANT TO N.Y. CPLR § 5225(B) AGAINST GARNISHEE INDUSTRIAL BANK OF KOREA**

KOBRE & KIM LLP

800 Third Avenue
New York, New York 10022
Tel: +1 212 488 1200
Fax: +1 212 488 1220

*Attorneys for E.I. du Pont de Nemours and Company*

# TABLE OF CONTENTS

Preliminary Statement ................................................................................................................ 1

Background ................................................................................................................................ 1

Argument .................................................................................................................................... 3

    I.    A TURNOVER ORDER IS PROPERLY PURSUED BY THIS MOTION .......... 3

    II.    THIS COURT HAS SUBJECT MATTER JURISDICTION ................................ 4

    III.    THIS COURT HAS PERSONAL JURISDICTION OVER IBK .......................... 5

    IV.    DUPONT IS ENTITLED TO A TURNOVER ORDER ........................................ 6

    V.    KOLON'S ASSETS ARE REACHABLE REGARDLESS OF AT WHICH IBK BRANCH THOSE ASSETS ARE HELD. ..................................... 7

Conclusion ................................................................................................................................ 11

Plaintiff, E.I. du Pont de Nemours and Company ("DuPont"), having obtained a civil money judgment in the amount of approximately US $ 920 million against defendant Kolon Industries, Inc. (together with Kolon Corp a/k/a Kolon Corporation, "Kolon" or the "Judgment Debtor") rendered by the United States District Court for the Eastern District of Virginia and registered in this Court pursuant to 28 U.S.C. § 1963, respectfully submits this memorandum in support of its motion for a turnover order against garnishee Industrial Bank of Korea ("IBK") pursuant to Federal Rule of Civil Procedure 69(a)(1) and N.Y. CPLR § 5225(b).

Preliminary Statement

This is a proceeding brought pursuant to Federal Rule of Civil Procedure 69(a)(1) and N.Y. CPLR § 5225(b) to enforce a judgment rendered by the U.S. District Court for the Eastern District of Virginia in favor of DuPont and against the Judgment Debtor and registered in this Court pursuant to 28 U.S.C. § 1963.

Evidence shows that the Judgment Debtor has assets in accounts at IBK, including without limitation, assets in the numbered accounts set forth on Appendix A hereto (collectively, the "Kolon Assets"). *See* May 24, 2012 Declaration of Carrie A. Tendler ("Tendler Decl.") at ¶ 15. DuPont requests an order directing garnishee IBK to turn over the Kolon Assets to DuPont, or so much of Kolon's assets as are sufficient to satisfy the judgment with interest.

Background

*The Judgment Debtor*

Kolon, the Judgment Debtor, is a global company based in South Korea which manufactures and markets industrial materials, chemicals, optical films, and fibers and fabrics for the apparel and fashion industries. Kolon produces and markets products which compete with DuPont's KEVLAR® products. *See* Tendler Decl. at ¶ 8.

In February 2009, DuPont filed an action against Kolon Industries, Inc. in the U.S. District Court for the Eastern District of Virginia for the misappropriation of trade secrets and related causes of action (the "Action"). During the pendency of the Action, in December 2009, Kolon undertook a corporate restructuring whereby Kolon Industries, Inc. (the defendant in the Action) split into two companies: a new holding company by the name of Kolon Corp or Kolon Corporation (which succeeded to Kolon's existing ticker symbol on the Korean Stock Exchange), and a "new" Kolon Industries Inc., which was established as an operating company (and was relisted under a new ticker symbol). This restructuring was purportedly effective as of December 31, 2009. Many of the subsidiaries and affiliates previously under the control of the original defendant in the Action were carved out and put under the control of the newly formed holding company (Kolon Corp a/k/a Kolon Corporation), leaving the new operating company (which confusingly also called itself "Kolon Industries, Inc.") with only a portion of its previous holdings. *See id.* at ¶ 10. This turnover application is therefore brought against IBK with respect to any assets held in the name of either the company now calling itself Kolon Industries Inc. or calling itself Kolon Corp. a/k/a Kolon Corporation, which all together comprise the successors to the legal entity named Kolon Industries, Inc. that was the original defendant in the Action.

### *The Judgment*

After a seven-week trial, a jury sitting in the U.S. District Court for the Eastern District of Virginia returned a verdict in favor of DuPont, finding that Kolon willfully and maliciously misappropriated and used at least 149 of DuPont's trade secrets. On November 22, 2011, the Court entered final judgment against Kolon for US $919.9 million in compensatory damages and US $350,000 in punitive damages (the "Judgment"). *See id.* at ¶ 11.

### *Post-judgment Proceedings*

After entry of the Judgment, Kolon sought a stay of execution pending appeal. On April 10, 2012, the U.S. District Court for the Eastern District of Virginia denied Kolon's motion to stay execution and granted DuPont's motion for permission to register the Judgment in other Districts pursuant to 28 U.S.C. § 1963. On April 13, 2012, DuPont registered the Judgment in this Court. *See id.* at ¶ 12 and 13.

Argument

## I. A TURNOVER ORDER IS PROPERLY PURSUED BY THIS MOTION

The Federal Rules of Civil Procedure provide that "[t]he procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located" Fed. R. Civ. P 69(a)(1). Section 5225(b) of the N.Y. CPLR in pertinent part provides:

> Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest . . . the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor . . . .

A special proceeding in New York state court is akin to a motion in federal court. *See Commerzbank, AG,* 764 F. Supp. 2d at 591 ("A special proceeding is a civil judicial proceeding in which a right can be established or an obligation enforced in summary fashion. Like an action, it ends in a judgment, but the procedure is similar to that on a motion. Speed, economy and efficiency are the hallmarks of this procedure.") (quoting Alexander, Comment C401:1 (McKinney's N.Y. CPLR, 2010)); *Mitchell v. Lyons Prof'l Servs., Inc*., 727 F. Supp. 2d 120, 122-23 (E.D.N.Y. 2010) ("A 'special proceeding' is a creature of New York practice that although brought as a distinct legal action, has more in common with motion practice than it does with a plenary action.").

> When available, [a special proceeding] reflects a legislative determination that the relief sought will often, although not always, require the resolution of primarily legal issues, rather than factual ones. It can be used only where the State Legislature has authorized it for the presentation of a particular type of legal issue or to obtain a particular form of relief. Because the focus is on an anticipated expedited resolution, discovery is not permitted absent leave of court, and rulings are usually made on the basis of the original petition, any affidavits served with it, and affidavits served in opposition.

*Mitchell*, 727 F. Supp. 2d at 123 (citing David D. Siegel, NEW YORK PRACTICE §§ 547 *et seq.* (4th ed. 2005)).

In federal court, a motion or petition brought pursuant to Rule 69 is a proper means by which to seek a turnover order. *See, e.g.*, *Commonwealth of the Northern Mariana Islands v. Millard*, Nos. 11 Misc. 99, 11 Misc. 100, 2012 WL 607256, at *1-2 (S.D.N.Y. Feb. 27, 2012) ("Nearly every court in this Circuit to consider the issue has held that parties can bring a motion under FRCP 69(a), rather than instituting a special proceeding under the New York state law."); *Trustees of the 1199/SEIU Greater N.Y. Benefit Fund v. Sieger*, No. 07 Civ. 9744 (DLC), 2011 WL 1630666 (S.D.N.Y. April 27, 2011) (granting turnover order brought by petition on summary judgment); *SEC v. Colonial Inv. Mgmt. LLC*, No. 07 Civ. 8849 (PKC), 2010 WL 4159276, at *2 (S.D.N.Y. Oct. 6, 2010) ("a judgment creditor proceeding under N.Y. CPLR section 5225(b) may proceed by motion, and need not institute a separate action"); *Mitchell*, 727 F. Supp. 2d 120 (E.D.N.Y. 2010) (creditor permitted to pursue CPLR § 5225(b) turnover order by motion in federal court). Accordingly, a turnover order against IBK for the Kolon Assets is properly pursued by the instant motion.

## II. THIS COURT HAS SUBJECT MATTER JURISDICTION

DuPont seeks to enforce a federal judgment which has been registered with this Court. Post-judgment proceedings, like this one, to enforce a federal court judgment pursuant to N.Y. CPLR § 5225, are properly pursued in federal court under the Court's ancillary jurisdiction. *See,*

*e.g.*, *City of New York v. Venkataram*, No. 06 Civ. 6578 (NRB), 2011 WL 2899092, at *6 n.9 (S.D.N.Y. July 13, 2011) ("As an initial matter, a district court retains jurisdiction to enforce the judgments it enters.") (internal quotation marks and citations omitted); *Cordius Trust v. Kummerfeld*, No. 99 Civ. 3200 (DLC), 2009 WL 3416235, at *7 (S.D.N.Y. Oct. 23, 2009) ("federal district court possesses inherent authority to effectuate enforcement of its judgments . . . [a] federal district court retains jurisdiction over supplementary proceedings to effectuate enforcement of its judgments.").

That the judgment against Kolon was originally rendered by the U.S. District Court for the Eastern District of Virginia, and registered in this Court pursuant to 28 U.S.C. § 1963, does not effect this Court's ancillary subject matter jurisdiction over this proceeding. "A judgment [registered pursuant to this section] shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner." 28 U.S.C. § 1963; *see also JW Oilfield Equip., LLC v. Commerzbank, AG*, 764 F. Supp. 2d 587, 591 n.1 (S.D.N.Y. 2011) ("the principle is the same for a judgment originating from another district") (citing *Kashi v. Gratos*, 712 F. Supp. 23, 25 (S.D.N.Y. 1989) and 28 U.S.C. § 1963).

## III. THIS COURT HAS PERSONAL JURISDICTION OVER IBK

This Court has personal jurisdiction over IBK because it is present and doing business in New York through its New York branch. *See* Tendler Decl. at ¶ 16. Courts consider the aggregate of a corporation's activities to decide whether a company maintains a presence in the State, "not occasionally or casually, but with a fair measure of permanence and continuity." *Yacone v. Excalibre Motor Lines*, 748 N.Y.S.2d 831, 832 (4th Dep't 2002). Here, IBK's contacts with New York are neither casual nor occasional, but are instead thoroughgoing and systematic.

Under New York's long-arm statute, "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state," regardless of whether the non-domiciliary has actually set foot in New York. *See* N.Y. CPLR § 302(a)(1). Whether a defendant has transacted business within New York is determined under the totality of the circumstances, and turns on whether the defendant, by some act or acts, has "purposefully avail[ed] itself of the privilege of conducting activities within [New York]." *Ehrenfeld v Bin Mahfouz*, 881 N.E.2d 830, 835 (N.Y. 2007).

IBK indisputably does business and is present in New York by virtue of its New York office, located at 1250 Broadway, 37th Floor, New York, NY 10001 (the "New York Branch"). *See* Tendler Decl. at ¶ 16. Based on the foregoing, IBK is subject to general personal jurisdiction in New York based on the presence and operation of the New York Branch. *See, e.g.*, *Eitzen Bank A/S v. Bank of India*, No. 09 Civ. 10118 (AKH), 2011 WL 4639823, at *2-5 (S.D.N.Y. Oct. 5, 2011) (Bank of India subject to general personal jurisdiction in New York based on its operation of a foreign branch office in New York). Further, IBK has brought an action as plaintiff in a civil suit in New York State Court. *See Industrial Bank of Korea v. JP Morgan*, 192 Misc.2d 219, 745 N.YS.2d 646 (N.Y. Civ. Ct. 2002).

## IV. DUPONT IS ENTITLED TO A TURNOVER ORDER

DuPont has obtained a money judgment against Kolon rendered by the U.S. District Court for the Eastern District of Virginia, which DuPont registered in this Court pursuant to 28 U.S.C. § 1963. *See* Tendler Decl. at ¶ 5 and 6. The evidence shows that garnishee IBK holds assets in which the Judgment Debtor has an interest. *See id.* at ¶ 14 and 16. Accordingly, "the [C]ourt shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor." N.Y. CPLR § 5225(b); *see also Trustees of the 1199/SEIU Greater N.Y. Benefit Fund*, 2011 WL 1630666, at *1 ("It is undisputed that [judgment debtor]

owes the petitioners-plaintiffs the entire amount of the . . . judgment plus post-judgment interest, and that [garnishee] owes [judgment debtor] $9 million, plus interest. Thus, the petitioners-plaintiffs' motion for summary judgment is granted.").

Further, although Kolon itself is in fact amenable to jurisdiction in New York, the question of personal jurisdiction over the judgment debtor is immaterial. *See, e.g.*, *Commonwealth of the Northern Mariana Islands*, 2012 WL 607256, at *3 ("the court need only have *in personam* jurisdiction over the *garnishee*; it does not need to have personal jurisdiction over the *judgment debtor* or *in rem* jurisdiction over the property in question.") (emphases in original); *Commerzbank, AG*, 764 F. Supp. 2d at 592 ("personal jurisdiction over the judgment debtor and *in rem* jurisdiction over the property are not necessary where the court's order is acting on the person of the garnishee.").

Because the Judgment Debtor's money is in the possession of IBK, DuPont is entitled to an order from this Court requiring IBK to turn over to DuPont the Kolon Assets and any funds held on behalf of, or for the benefit of Kolon, or so much of it as is sufficient to satisfy the Judgment with interest.

## V. KOLON'S ASSETS ARE REACHABLE REGARDLESS OF AT WHICH IBK BRANCH THOSE ASSETS ARE HELD.

DuPont seeks an order pursuant to CPLR Article 52 directing IBK, an entity unquestionably present in New York and subject to the Court's jurisdiction, to turn over the Judgment Debtor's assets in its possession (even if held outside of New York). That the Judgment Debtor's assets may be held at IBK in an account or branch/sub-division located outside of New York is of no moment.

In *Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 539, 911 N.E.2d 825, 829, 883 N.Y.S.2d 763, 767 (N.Y. 2009), the New York Court of Appeals squarely held that "CPLR

7

article 52 contains no express territorial limitation barring the entry of a turnover order that requires a garnishee to transfer money or property into New York from another state or country. . . . We hold that a New York court with personal jurisdiction over a defendant may order him to turn over out-of-state property regardless of whether the defendant is a judgment debtor or a garnishee."). For example, in *JW Oilfield Equip., LLC v. Commerzbank, AG*, 764 F. Supp. 2d 587 (S.D.N.Y. 2011), the court applied *Koehler* under precisely the circumstances now before the Court:

> Commerzbank admits that it does business in New York systematically and continuously through its New York branch, which is not incorporated and is not an entity separate from the German bank. This Court has general personal jurisdiction over Commerzbank, and thus under *Koehler*, this Court may issue a turnover order under N.Y. CPLR § 5225(b) directing Commerzbank to turn over funds up to the amount of the judgment, regardless of whether those accounts are held in Germany or New York.

*Commerzbank, AG*, 764 F. Supp. 2d at 593.

Nevertheless, based on briefing in related proceedings, DuPont expects IBK and Kolon to oppose this motion on the basis of the "separate entity rule," a vestige of common law by which branches of the same legal entity (but applicable only if that entity is a bank) may be treated as separate legal entities for purposes of attachment or garnishment (even though they are not in fact separate entities). That doctrine, however, does not limit this Court's authority to order IBK to turn over the Judgment Debtor's out-of-state assets.

Despite the plain mandate of the New York Court of Appeals in *Koehler*—that there are no territorial limitations on Article 52 post-judgment devices where there is personal jurisdiction over a garnishee—a number of courts have declined to abrogate the separate entity doctrine in the post-judgment context altogether, because the Court of Appeals in *Koehler* did not expressly

announce it was repudiating the doctrine, leading to inconsistent views among the courts about the separate entity doctrine's continued applicability in post-judgment enforcement proceedings.[1]

But even assuming the separate entity rule remains applicable to somehow limit judgment creditors' remedies in relation to banks, the doctrine does not limit the power of a court to issue an order (even with extraterritorial effect) to a bank over which the court has jurisdiction. In other words, the separate entity doctrine does not operate as some sort of special limitation on personal jurisdiction (the very power of the court) when it comes to banks. *See Global Technology, Inc. v. Royal Bank of Canada*, No. 150151/2011, 2012 WL 89823, *3-13 (N.Y. Sup. Ct. Jan. 11, 2012) (the separate entity rule, particularly following *Koehler*, is at most a rule governing service of process of *ex parte* restraints or writs of garnishment or attachment, not a limitation on the court's power over banks properly before the court).

Finally, even if the separate entity doctrine were to be (mis)applied in this context, whether non-U.S. deposits can be reached in any particular case depends on the facts in that

---

[1] *See, e.g.*, *Samsun Logix Corp. v. Bank of China*, No. 105262/10, 2011 WL 1844061, at *3 (N.Y. Sup. Ct. May 12, 2011) ("the Court of Appeals in *Koehler* did not even mention the separate entity rule, thereby strongly indicating that it had not intended to overrule that doctrine."); *compare Commerzbank, AG*, 764 F. Supp. 2d at 595 ("New York courts will not apply the separate entity rule in post-judgment execution proceedings.") *and Gucci America, Inc. v. Li*, No. 10 Civ. 4974, 2011 WL 6156936, *4 (S.D.N.Y. Aug. 23, 2011) ("The fact that some of the funds subject to the Injunction are located outside of the United States does not, contrary to the Bank's arguments, deprive the Court of authority to issue the restraint.") *and McCarthy v. Wachovia Bank, NA*, 759 F. Supp. 2d 265, 274-75 (E.D.N.Y, 2011) ("Here, because Wachovia has branches within New York—and therefore conducts business in New York—it is subject to the jurisdiction of the New York courts. Accordingly, under the Court of Appeals' holding in *Koehler*, it was permissible for defendants to issue and honor the restraining notice") *with Parbulk II AS v. Heritage Maritime, SA*, 35 Misc. 3d 235, 239 n.1, 935 N.Y.S.2d 829, 832 n.1 (N.Y. Sup. Ct. 2011) ("In declining to apply the separate entity rule, the court in *JW Oilfield Equip*. stated that '*Koehler* indicates that New York courts will not apply the separate entity rule in post-judgment execution proceedings.' This court disagrees."); *see also Shaheen Sports, Inc. v. Asia Ins. Co. Ltd.*, Nos. 98-cv-5951, 11-cv-920, 2012 WL 919664 (S.D.N.Y. March 14, 2012) (acknowledging lack of clarity surrounding separate entity rule in this context and denying a motion for a turnover order against a Pakistani bank, but ordering the continuation of a restraining order while permitting appeal pursuant to 28 U.S.C. § 1292(b)).

case—namely, how the bank at issue practically functions internally. In other words, the separate entity rule, even if doctrinally viable here (and it is not) is in any event by no means an absolute bar to collection, but rather the outcome depends on the specific facts of the bank's operations, to be determined on a case-by-case basis. *See, e.g.*, *Limonium Maritime SA v. Mizushima Marienera, SA*, 962 F. Supp. 600, 607 (S.D.N.Y. 1997) ("New York decisions since *Digitrex* have determined the validity of the service of restraining notices and subpoenas on a case by case basis in relation to a bank's existing computer operations and the burden imposed by compliance.") (quotation marks and citations omitted).

## Conclusion

For the foregoing reasons, this Court should grant DuPont's motion for a turnover order against garnishee IBK pursuant to N.Y. CPLR § 5225(b).

Dated: New York, New York
      May 24, 2012

Respectfully submitted,

KOBRE & KIM LLP

Carrie A. Tendler
carrie.tendler@kobrekim.com
Michael S. Kim
michael.kim@kobrekim.com
800 Third Avenue
New York, New York 10022
Tel: +1 212 488 1200
Fax: +1 212 488 1220

Marcus J. Green
marcus.green@kobrekim.com
1919 M Street NW
Washington, DC 20036
Tel: +1 202 664 1900
Fax: +1 202 664 1920

*Attorneys for E.I. du Pont de Nemours and Company*

## Appendix A

