FILED UNDER SEAL

CONTAINS INFORMATION DESIGNATED AS "CONFIDENTIAL" AND
"CONFIDENTIAL - ATTORNEYS' EYES ONLY"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

E.I. du PONT de NEMOURS AND
COMPANY,

                Plaintiff,

      v.

KOLON INDUSTRIES, INC. and
KOLON CORPORATION,

                Defendants.

Case No. 12-cv-08435

**DUPONT'S POST-HEARING MEMORANDUM IN FURTHER SUPPORT
OF ITS MOTION FOR A TURNOVER ORDER AGAINST KOLON**

KOBRE & KIM LLP

800 Third Avenue
New York, New York 10022
Tel: +1 212 488 1200
Fax: +1 212 488 1220

*Attorneys for E.I. du Pont de
Nemours and Company*

**TABLE OF CONTENTS**

Preliminary Statement ................................................................................................................... 1

Procedural History ........................................................................................................................ 2

Argument ....................................................................................................................................... 4

    I.     LEGAL STANDARDS ........................................................................................ 4

         A.     "Doing Business" Under N.Y. CPLR § 301 ............................................... 4

         B.     Consent to Jurisdiction by Registration ...................................................... 5

         C.     Agency for Purposes of Jurisdiction ........................................................... 6

         D.     Due Process .................................................................................................. 7

    II.    THE KOLON GROUP ....................................................................................... 8

    III.   KOLON CORPORATION AND THE NEW KOLON INDUSTRIES,
         INC. ARE THE RELEVANT JUDGMENT DEBTORS FOR
         ANALYZING PERSONAL JURISDICTION ....................................................... 9

         A.     Kolon Corporation is the Defendant ............................................................ 9

         B.     The Judgment is Also Enforceable Against the New Kolon
             Industries, Inc. ............................................................................................ 10

         C.     Kolon's Reorganization Does Not Exempt Kolon Corporation
             from the Law of Agency Jurisdiction ......................................................... 13

    IV.   KOLON IS SUBJECT TO THE COURT'S JURISDICTION ............................. 15

         A.     Kolon Holds Itself Out as Present in New York ........................................ 15

         B.     Kolon Does Business in New York ............................................................ 17

         C.     Kolon Global Corporation is Subject to the Court's Jurisdiction ............. 19

         D.     Kolon Global Corporation is Kolon's Agent for Purposes of
             Jurisdiction ................................................................................................. 21

         E.     The Exercise of Jurisdiction Over Kolon is Fair and Reasonable ............ 24

Conclusion .................................................................................................................................. 26

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Air Line Pilots Ass'n Int'l v. Tex. Int'l Airlines, Inc.,*
   567 F. Supp. 78 (S.D. Tex. 1983) .......................................................................................10

*Airtran New York, LLC v. Midwest Air Grp.,*
   844 N.Y.S.2d 233 (1st Dep't 2007) ....................................................................................14

*Aquascutum of London, Inc. v. S.S. Am. Champion,*
   426 F.2d 205 (2d. Cir. 1970).............................................................................................4, 7

*Beja v. Jahangiri,*
   453 F.2d 959 (2d Cir. 1972) ..................................................................................................6

*Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.,*
   975 F. Supp. 562 (S.D.N.Y. 1997).........................................................................................6

*Bellomo v. Pennsylvania Life Co.,*
   488 F. Supp. 744 (S.D.N.Y. 1980).......................................................................................14

*Bialek v. Racal-Milgo, Inc.,*
   545 F. Supp. 25 (S.D.N.Y. 1982).......................................................................................6-7

*Chambers v. Nasco, Inc.,*
   501 U.S. 32 (1991).............................................................................................................13

*Frummer v. Hilton Hotels Int'l, Inc.,*
   19 N.Y. 2d 533 (1967) .....................................................................................................6, 7

*Gallelli v. Crown Imports, LLC,*
   701 F. Supp. 2d 263 (E.D.N.Y. 2010) ................................................................................13

*Gelfand v. Tanner Motor Tours, Ltd.,*
   385 F.2d 116 (2d Cir. 1967)..............................................................................................6, 7

*Haywin Textile Prods., Inc. v. Int'l Fin. Inv. & Commerce
Bank Ltd.,* No. 010-9190, 38 Fed. Appx. 96,
   2002 WL 1362978 (2d Cir. June 24, 2002) .......................................................................10

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab.
Litig.,* MDL No. 1358 (SAS), 2008 WL 3163634,
   (S.D.N.Y. Aug. 8, 2008) ................................................................................................12-13

*Kropschot Fin. Servs., Inc. v. Balboa Capital Corp.*,
  No. 11 Civ. 8609 (SAS), 2012 WL 1870697,
  (S.D.N.Y. May 21, 2012) ..................................................................................................... 5-6

*Laufer v. Ostrow,*
  55 N.Y.2d 305 (1982) ............................................................................................................ 4

*Mayatextil, SA v. Liztex U.S.A., Inc.,*
  No. 92 Civ. 4528 (SS), 1995 WL 131774,
  (S.D.N.Y. March 23, 1995) ................................................................................................. 4-5

*McKinnon v. Talladega Cnty., Ala.,*
  745 F.2d 1360 (11th Cir. 1984) ...................................................................................... 13-14

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.,*
  84 F.3d 560 (2d Cir. 1996) ................................................................................................. 25

*New York Marine Managers, Inc. v. M.V. "Topor-1",*
  716 F. Supp. 783 (S.D.N.Y. 1989) .................................................................................. 5, 7

*Palmieri v. Estefan,*
  793 F. Supp. 1182 (S.D.N.Y. 1992) ................................................................................ 6, 8

*Revlon, Inc. v. United Overseas Ltd.,*
  No. 93 Civ. 0863 (SS), 1994 WL 9657,
  (S.D.N.Y. Jan. 12, 1994) ..................................................................................................... 5

*Seven Arts Pictures, Inc. v. Jonesfilm,*
  Nos. 09-4814, 09-4815, 2012 WL 5398439
  (E.D. La. Nov. 1, 2012) ....................................................................................................... 11

*The Rockefeller Univ. v. Ligand Pharm. Inc.,*
  581 F. Supp. 2d 461 (S.D.N.Y. 2008) ................................................................................ 6

*Wiwa v. Royal Dutch Petroleum Co.,*
  226 F.3d 88 (2d Cir. 2000) ............................................................................................... 7-8

## Statutes and Rules                                                   Page(s)

28 U.S.C. § 1963 .......................................................................................................................... 2

Fed. R. Civ. P. 25 ........................................................................................................................ 9

N.Y.CPLR § 301 ....................................................................................................................... 4, 5

N.Y.CPLR § 302 ........................................................................................................................... 5

|  | Page(s) |
|---|---|
| N.Y.CPLR § 5225 | 2, 3, 25, 26 |

**Other Authorities**                                                    Page(s)

7C Wright, Miller, Kane & Marcus,
  Federal Practice and Procedure § 1958 (3d ed.) ...... 9, 10

The judgment creditor E.I. du Pont de Nemours and Company ("DuPont") respectfully submits this post-hearing memorandum in support of its motion for a turnover order against Kolon Industries, Inc. (which has renamed itself Kolon Corporation and is succeeded by a new company also named Kolon Industries, Inc. (together, "Kolon")).

## Preliminary Statement

The threshold issue with respect to DuPont's motion for a turnover order is the propriety of this Court's exercise of personal jurisdiction over Kolon. Here, the evidence shows that Kolon is amenable to general personal jurisdiction.

The Kolon Group consists of commonly-owned companies controlled by a single family, which operate worldwide. The current chairman is the grandson of the founder. Kolon Corporation sits atop the Kolon Group as the ultimate parent. The evidence shows that the Kolon Group has (until DuPont made the instant turnover application) aggressively pursued business in New York, and has benefited from holding itself out as present in New York.

One of Kolon's subsidiaries, Kolon Global Corporation ("Kolon Global") is indisputably present and doing business in New York. It maintains a New York corporate registration, it holds itself out to the world—as part of the Kolon Group of companies—as having a physical office on West 38th Street in Manhattan, and it actually does business in New York (in excess of mere solicitation).

There are three questions for the Court to decide based on the evidence (any one of which if answered in the affirmative justifies the Court's exercise of jurisdiction over Kolon). *First*, are the direct contacts between Kolon (Kolon Corporation and "new" Kolon Industries) and New York, along with evidence that Kolon holds itself out to the world in promotional materials as present in New York, together sufficient to establish general personal jurisdiction? Courts in this

District have held that purposefully holding oneself out as present in New York can alone result in legal presence for purposes of jurisdiction. When combined with even borderline actual business contacts, the Court is entitled to exercise jurisdiction.

*Second*, is it more likely than not that Kolon Corporation, in the absence of Kolon Global and Kolon Global's local contractor, would enlist one or another of its numerous subsidiaries to perform substantially similar business activities as currently performed by Kolon Global in relation to New York? *Third*, is it more likely than not that (but for this application), if Kolon Global did not serve the purpose, would Kolon Corporation have held out some other member of the Kolon Group as present in New York to further its integrated worldwide promotional efforts?

Kolon's conclusory and incredible denials aside, the Court has adequate basis to exercise personal jurisdiction over Kolon and adjudicate the merits of DuPont's turnover application.

**Procedural History**

In November 2011, the U.S. District Court for the Eastern District of Virginia (the "Virginia Court") entered judgment in favor of DuPont against Kolon Industries, Inc. for approximately US $920 million (the "Judgment"). The Virginia Court, over Kolon's opposition, authorized the registration and enforcement of the Judgment in Districts outside of Virginia. On April 13, 2012, DuPont registered the Judgment in this Court pursuant to 28 U.S.C. § 1963 (opening the miscellaneous Case No. 12 Misc. 120). In May 2012, DuPont moved this Court (Stein, J., sitting in Part 1) for turnover orders, pursuant to N.Y. CPLR § 5225(b), against several banks in New York known to possess Kolon's assets, and moved to compel the banks' compliance with Rule 45 subpoenas seeking discovery in aid of execution.

After Kolon appeared to oppose those motions, and refused to give its customer consent for the banks to comply with the subpoenas (which consent would moot the banks' objections

2

based on foreign bank secrecy laws), DuPont moved the Court for a turnover order, pursuant to N.Y. CPLR § 5225(a), against Kolon itself.  Kolon opposed DuPont's motions on the ground that the Court lacked personal jurisdiction over it.

The Court (Koeltl, J., sitting in Part 1) denied the turnover motion without prejudice, and authorized jurisdictional discovery with leave to re-file the motion after further evidence had been gathered.   The various bank motions were stayed pending resolution of the turnover application against Kolon (as a turnover order directed to Kolon, if complied with, could obviate the need for separate actions against the banks as garnishees).

On November 7, 2012, DuPont renewed its turnover application against Kolon before the Honorable Lewis A. Kaplan, then sitting as Part 1.  DuPont also requested that a single judge preside over the case for the sake of continuity and judicial economy.  By order of November 15, 2012, Chief Judge Preska directed the clerk to assign a civil docket number to the case and wheel it out to a District Judge.  The action was assigned to Judge Sweet.

Judge Sweet heard DuPont's turnover motion on January 30, 2013, during which Kolon contested certain facts presented by DuPont as part of its *prima facie* showing of jurisdiction.  To resolve disputed facts, the Court set an evidentiary hearing for March 11, 2013.  On February 7, 2013, citing the unavailability of counsel and witnesses, Kolon asked the Court to continue the hearing until "late April...or early May 2013."  The hearing began on April 29, 2013.  After the Court heard the parties' opening statements, Kolon asked Judge Sweet to recuse himself after he disclosed what he termed as a *de minimis* personal claim against DuPont for damage to some trees on his vacation property.  After the matter was re-assigned to Your Honor, on April 30 and May 1, 2013, the Court heard testimony from three Kolon witnesses, all called by DuPont.

3

<u>Argument</u>

## I.     LEGAL STANDARDS

### A.     "Doing Business" Under N.Y. CPLR § 301

Under N.Y. CPLR § 301, the New York courts may exercise jurisdiction over a foreign corporation deemed "present" under the law by virtue of its activities. "Solicitation of business alone will not justify a finding of corporate presence in New York with respect to a foreign manufacturer or purveyor of services, but when there are activities of substance in addition to solicitation there is presence and, therefore, jurisdiction." *Laufer v. Ostrow*, 55 N.Y.2d 305, 309-310 (1982) (citations omitted). "[O]nce solicitation is found in any substantial degree very little more is necessary to a conclusion of 'doing business.'" *Aquascutum of London, Inc. v. S.S. Am. Champion*, 426 F.2d 205, 211 (2d. Cir. 1970).

There are two types of activities that are relevant to the Court's analysis. *First*, where a company regularly services New York customers (such as dealing with complaints, sending samples, and handling difficulties with and specifications for customer orders), the company may be subject to jurisdiction. *See, e.g.*, *Mayatextil, SA v. Liztex U.S.A., Inc.*, No. 92 Civ. 4528 (SS), 1995 WL 131774, at *3 (S.D.N.Y. March 23, 1995) (citing and quoting *Laufer*, 55 N.Y.2d at 311-12).

*Second*, when a company holds itself out as present in New York, even if it does not actually have an office in New York, it may be deemed under the law as present and doing business for purposes of general personal jurisdiction. *See, e.g.*, *Mayatextil*, 1995 WL 131774, at *3 ("Even if no such [New York] office existed, when a defendant holds itself out to the world as having a New York office, such a corporation is deemed to be 'doing business' in New York for jurisdictional purposes. Therefore, [the defendant's] description of itself as having a New York office brings its acts beyond mere solicitation to the 'doing business' level.") (citations and

4

quotation marks omitted) (Sotomayor, J.); *Revlon, Inc. v. United Overseas Ltd.,* No. 93 Civ. 0863 (SS), 1994 WL 9657, at *2 (S.D.N.Y. Jan. 12, 1994) ("Indeed, even if a foreign corporation does not actually maintain an office in New York, if it holds itself out to the public as having one, such corporation will be deemed 'doing business' in New York for jurisdictional purposes.") (citation omitted) (Sotomayor, J.); *New York Marine Managers, Inc. v. M.V. "Topor-1"*, 716 F. Supp. 783, 785-86 (S.D.N.Y. 1989) ("testimony [denying that a New York office belonged to the defendant] misses the central point, *i.e.*, that [the defendant] was holding itself out to the world as having a New York office.") (Mukasey, J.).

When a corporation is deemed present in New York, although it may yet inform the separate reasonableness inquiry, the quantum of business transacted in New York is of no moment to the analysis under N.Y. CPLR § 301. For example, if a company maintains an office in New York, it is subject to general personal jurisdiction "even if little or no business is actually transacted within the state." *New York Marine Managers*, 716 F. Supp. at 785. Only the *specific* jurisdiction statute (CPLR § 302) requires that a defendant "derive[ ] substantial revenue from goods used or consumed or services rendered" in New York. *See* N.Y. CPLR § 302(a)(3)(i).

### B.    Consent to Jurisdiction by Registration

If a corporation maintains an active registration with the New York Department of State, New York law deems authorization to do business as consent to general personal jurisdiction. Because the company is deemed to consent to jurisdiction, the actual business conducted in New York is not relevant to the analysis. *See, e.g.*, *Kropschot Fin. Servs., Inc. v. Balboa Capital Corp.*, No. 11 Civ. 8609 (SAS), 2012 WL 1870697, at *4 (S.D.N.Y. May 21, 2012) ("None of the traditional indicia of general jurisdiction apply here. . . .   but in maintaining an active authorization to do business and not taking steps to surrender it as it has a right to do, defendant was on constructive notice that New York deems authorization to do business as consent to

5

jurisdiction. [Defendant] is subject to general jurisdiction in this court.") (citation and quotation marks omitted) (Scheindlin, J.).[1]

C.     Agency for Purposes of Jurisdiction

"[U]nder New York law, jurisdiction may be obtained over a foreign company if it is a 'mere department' of an entity that is present in New York, or if the relationship between the foreign corporation and the local one gives rise to the valid inference of an agency relationship." *Palmieri v. Estefan*, 793 F. Supp. 1182, 1187 (S.D.N.Y. 1992) (citations omitted). "In *Frummer v. Hilton Hotels Int'l*, the New York Court of Appeals held that an agency relationship existed for jurisdictional purposes where one corporation 'does all the business which [the other corporation] could do were it here by its own officials.'" *Palmieri*, 793 F. Supp. at 1190 (citing and quoting *Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y. 2d 533, 537 (1967)); *see also Gelfand v. Tanner Motor Tours, Ltd.*, 385 F.2d 116, 121 (2d Cir. 1967).

Traditional legal agency or control of the local representative by the foreign company is *not* required. *See, e.g., Frummer*, 19 N.Y.2d at 538 ("the fact that the two are commonly owned is significant only because it gives rise to a valid inference as to the broad scope of the agency in the absence of an express agency agreement"); *Palmieri*, 793 F. Supp. at 1194 ("when two corporations have common ownership and their activities are interrelated as here, they may have an agency relationship for jurisdictional purposes, even if the resident corporation is not controlled by the nonresident entity."); *Bialek v. Racal-Milgo, Inc.*, 545 F. Supp. 25, 32-33

---

[1] Kolon's reliance on *Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*, 975 F. Supp. 562 (S.D.N.Y. 1997) (which it mentioned at the hearing), is unavailing. *See* May 2 Tr. at 354:17-22.  The court in *Bellepointe*, relying on dictum from *Beja v. Jahangiri*, 453 F.2d 959, 962 (2d Cir. 1972), held that registering to do business is not necessarily consent to personal jurisdiction.  But New York law is otherwise. *See The Rockefeller Univ. v. Ligand Pharmaceuticals Inc.*, 581 F. Supp. 2d 461, 464-66 (S.D.N.Y. 2008) (rejecting the holding of *Bellepointe* and observing that the majority of federal district and New York courts hold that a filing for authorization to do business is sufficient to subject a foreign corporation to general personal jurisdiction) (Castel, J.).

(S.D.N.Y. 1982) (jurisdiction found where non-resident and local company were "components of a tightly-knit commercial organization of common-owned entities").

Further, a foreign company may be subject to jurisdiction where it holds itself out through an agent as present in New York. *See, e.g.*, *Aquascutum of London*, 426 F.2d at 212 ("all the cases we have discovered which find personal jurisdiction under the 'solicitation-plus' rubric have involved either some financial or commercial dealings in New York, or the defendant's holding himself out as operating in New York, either personally or through an agent.") (citations omitted). For example, in *New York Marine Managers, Inc. v. M.V. "Topor-1"*, the court held that a foreign company's promotion of the New York office of a commonly-controlled company as its own was "strong evidence" of agency for purposes of asserting jurisdiction over the foreign company:

> In a promotional brochure, Ektrans proclaims that it has an overseas branch in New York City, and provides its exact address, telex number and telephone numbers. Although the brochure was distributed by Ektrade and not Ektrans, the evidence establishes that both companies were under common control and ownership to a sufficient degree that, for jurisdictional analysis, Ektrade's dissemination of the brochure is chargeable to Ektrans.
> \*\*\*
> Even if Gozacan's testimony is literally true, and the New York office belonged to Ekco, the fact that Ektrans, a related company under common control, listed Ekco's office as its own is strong evidence—for purposes of determining jurisdiction—that Ektrans used Ekco as its New York agent.

*New York Marine Managers*, 716 F. Supp. at 785-86 (record citations omitted, citing *inter alia Frummer* and *Gelfand*).

### D. Due Process

In addition to the requirements of New York law, to establish personal jurisdiction over Kolon, the assertion of jurisdiction may not offend constitutional due process. "The required due process inquiry itself has two parts: whether a defendant has 'minimum contacts' with the forum state and whether the assertion of jurisdiction comports with 'traditional notions of fair play and

7

substantial justice—that is whether the exercise of jurisdiction is reasonable under the circumstances of a particular case.'" *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 99 (2d Cir. 2000) (citations omitted).

"As a general rule, in making the constitutional analysis once a plaintiff has made a 'threshold showing' of minimum contacts, the defendant must come forward with a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (citations omitted). The Court may take into consideration "the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief, as well as the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in further[ing] fundamental substantive social policies." *Palmieri*, 793 F. Supp. at 1194 (citations and quotation marks omitted).

## II.    THE KOLON GROUP

Kolon Corporation owns and controls numerous subsidiaries, known collectively as Kolon Group. *See* Exhibit 142 at 150-51. Kolon's predecessor, Korea Nylon, was founded by Won Man Lee in the 1950s. *See* Exhibit 231. His son, Dong Chan Lee, became the chairman of the Kolon Group in 1977. *See* Exhibit 230. Dong Chan Lee's son, Woong Yeul Lee, is the current chairman of the Kolon Group. *See* Exhibit 186. Woong Yeul Lee and his father, Dong Chan Lee, together own 52.46% of Kolon Corporation. *See* Exhibit 142 at 155.

Among its numerous subsidiaries, Kolon Corporation owns the "new" Kolon Industries, Inc. (a recently created company described below) and Kolon Global. *See* Exhibit K62. Kolon Corporation owns 56.85% of Kolon Global. *See* Exhibit 142 at 150. Kolon Global was formed on December 28, 2011 from the merger of three Kolon subsidiaries, including Kolon I'Networks (sometimes translated as Kolon I'Net Corporation). *See* Exhibit 140 at 5. Kolon I'Networks was formed in 2006 from the merger of two Kolon subsidiaries, including Kolon International.

8

*See* Exhibit 140 at 10. Kolon International was established in 2001 (*see* Exhibit 140 at 9) and was the company "in charge of the trade business for the Kolon Group." *See* Exhibit 141 at T-000004. As explained below, Kolon Global continues to act as the trading agent for the Kolon Group in relation to its New York business.

## III.   KOLON CORPORATION AND THE NEW KOLON INDUSTRIES, INC. ARE THE RELEVANT JUDGMENT DEBTORS FOR ANALYZING PERSONAL JURISDICTION

### A.   Kolon Corporation is the Defendant

At the hearing, Kolon confused the corporate identity of the defendant in this proceeding. Counsel for Kolon told the Court that they were appearing for "Kolon Industries" (*see, e.g.*, April 30 Tr. at 29:24-30:2) and faulted DuPont, arguing that "[D]uPont made no effort . . . to substitute parties . . . and seek to obtain a judgment against Kolon Corporation." April 30 Tr. at 38:24-39:2. Kolon misunderstands the law.

The defendant that DuPont sued in 2009 in the underlying action was, at the time, called Kolon Industries, Inc. During the pendency of the action, Kolon Industries, Inc. (while keeping the same Korea Stock Exchange ticker symbol), changed its name to Kolon Corporation and transferred certain assets to a new company which it confusingly named Kolon Industries, Inc. *See* Exhibits 61 & 256. This transaction was purportedly effective December 31, 2009. *See* Exhibit 61; *see also* Exhibit K14 at SDNY_KI00008880.

Rule 25(c) governs situations where, as here, a party transfers an interest during the pendency of an action, providing: "If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Fed. R. Civ. P. 25(c). "The rule applies to ordinary transfers and assignments, as well as to corporate mergers." 7C Wright, Miller, Kane & Marcus, Federal Practice and Procedure ("Wright & Miller") § 1958 (3d ed.).

Absent an order substituting a transferee for an original party, a transfer of interest does

not alter the rights of the parties or of any successor in interest. Wright & Miller explain:

> The most significant feature of Rule 25(c) is that it does not require that anything
> be done after an interest has been transferred. The action may be continued by or
> against the original party, *and the judgment will be binding on the successor in*
> *interest even though the successor is not named.* An order of joinder is merely a
> discretionary determination by the trial court that the transferee's presence would
> facilitate the conduct of the litigation. The court, if it sees fit, may allow the
> transferee to be substituted for the transferor. It is also free, if it wishes, to retain
> the transferor as a party and to order that the transferee be made an additional
> party. *In either case, personal jurisdiction and venue will be extended over the*
> *successor; it is not necessary to re-establish those requirements.*

Wright & Miller § 1958 (emphases added). There is no time limit for moving under the Rule

(*see id.*), the motion may be made by any party (*see id.*), and may be made "after judgment . . .

for the purpose of subsequent proceedings to enforce a judgment." *Air Line Pilots Ass'n Int'l v.*

*Tex. Int'l Airlines, Inc.*, 567 F. Supp. 78, 81 (S.D. Tex. 1983). Accordingly, unless and until

*Kolon* obtains an order substituting the new Kolon Industries, Inc. for the original defendant

(now known as Kolon Corporation), Kolon Corporation remains the defendant and judgment

debtor for purposes of execution, including for purposes of the instant proceeding.

B. The Judgment is Also Enforceable Against the New Kolon Industries, Inc.

Under the law of successor liability, a corporation that acquires assets of another will be

liable for the debts and liabilities of the predecessor if *inter alia* it agrees to assume the liability.

*See, e.g.*, *Haywin Textile Prods., Inc. v. Int'l Fin. Inv. & Commerce Bank Ltd.*, No. 010-9190, 38

Fed. Appx. 96, 2002 WL 1362978, at * 97 (2d Cir. June 24, 2002) ("In general successor

liability will lie under New York law when *inter alia* there is an express or implied agreement to

assume the other company's debts and agreements.") (citation, quotation marks, and indications

of alterations from original omitted).

10

Successor liability will be found where the terms of the relevant transfer or merger agreements provide for the assumption of the liability, or where a successor otherwise agrees to assume the liability. *See, e.g., Seven Arts Pictures, Inc. v. Jonesfilm*, Nos. 09-4814, 09-4815 (JTM), 2012 WL 5398439, at *6 (E.D. La. Nov. 1, 2012) (the successor "must be considered a judgment debtor as the successor" to the predecessor "because of the original . . . judgment and [the successor's] own SEC filings asserting its status as successor to" the predecessor judgment debtor. "Accordingly, the Court hereby amends its Order to specifically rule that [the successor] is a judgment debtor . . .").

The "new" Kolon Industries, Inc. is liable for the Judgment as successor to the original defendant because it agreed to be. In Kolon's disclosure to the Financial Service Commission (Korea's equivalent to the SEC), Kolon explained that by the transaction it was to specifically allocate responsibility for lawsuits based on whether the lawsuit concerned a particular business sector to be spun off or retained. *See* Exhibit K13 at K01015321_translated ("The lawsuit for which the split company [Kolon Corporation] is a party before the appointed date of [the] split belongs to the new corporation [Kolon Industries] if it is about the sector to split, and to the split company [Kolon Corporation] if it is about the sector other than the other sectors to split."). Kolon, in its submission to the Virginia Court on the re-organization, confirmed that the sector related to this lawsuit, namely, "the industrial manufacturing operations and assets (including Heracron)" (which was the subject of the Virginia action), was spun off to the new Kolon Industries, Inc. *See* Exhibit 61 at 2.

Kolon's conduct in litigating this case further demonstrates its desire for the new Kolon Industries, Inc. to be regarded as the party liable for the Judgment in this case. For example, at the hearing, Kolon argued that the issue to be decided here is whether Kolon Global's "business

11

in New York can properly be imputed to [Kolon] Industries." May 2 Tr. at 354:23-25. The new Kolon Industries, Inc. is apparently also the party pursuing the appeal of the Judgment (even though it is not a party). *See* Docket No. 19, Docketing Statement at 2, *E.I. du Pont de Nemours and Company v. Kolon Industries, Inc.,* Case No. 12-2070 (4th Cir.).

That Kolon *wishes* the new Kolon Industries, Inc. to be *solely* liable for the Judgment does not absolve the original defendant, Kolon Corporation, of liability or eliminate it as the defendant. Similar circumstances arose in the multi-district *MTBE Products Liability Litigation*. There, Getty Properties was the same corporate entity as Getty Petroleum Corp., and after changing its name in a spin-off, argued that it was not the proper defendant in that case. Instead, it claimed that GPMI was the successor-in-interest to the particular Getty Petroleum business at issue and was liable under common law successor liability rules. In that case, the court rejected the very arguments Kolon seems to be advancing here:

> The major flaw in Getty Properties' argument is that while the common law of successor liability governs when a plaintiff can bring a claim against a *successor* corporation, it does not prevent a plaintiff from also suing the predecessor corporation. A sale of assets does not vitiate the original company's liability, and if one of the successor liability exceptions applies, the injured party can elect to proceed against the defunct corporation, the successor corporation, or both. Here, plaintiffs have chosen to proceed against the predecessor corporation. A finding that GPMI is a mere continuation of Getty Petroleum's marketing business thus would not require dismissal of plaintiffs' claims against Getty Properties. Yet Getty properties' argument assumes that if GPMI can be held liable on claims arising from Getty Petroleum's marketing business under the law of successor liability, Getty Properties cannot be held liable on those claims. This assumption fundamentally misapprehends the exceptions allowing plaintiffs to pursue a successor corporation, which are designed to protect injured plaintiffs by ensuring them a source of recovery—*not to protect corporations that have transferred their assets from liability for their own torts.*

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, MDL No. 1358 (SAS), 2008 WL 3163634, at *4 (S.D.N.Y. Aug. 8, 2008) (citations and quotations omitted) (second emphasis

added). Because the original defendant has not been ordered substituted, Kolon Corporation remains as a matter of law the defendant here, and because Kolon Industries, Inc. is liable for the Judgment as its successor, DuPont properly pursues enforcement against both of them.

> C. Kolon's Reorganization Does Not Exempt Kolon Corporation from the Law of Agency Jurisdiction

Faced with the certainty that Kolon Corporation is liable for the Judgment, Kolon will argue (as it did at the hearing (*see* May 2 Tr. at 353:9-15)) that Kolon Global cannot be Kolon Corporation's agent for purposes of jurisdiction, because, as a "holding company," Kolon Corporation is engaged only in the business of investment. *See, e.g.*, *Gallelli v. Crown Imports, LLC*, 701 F. Supp. 2d 263, 272 (E.D.N.Y. 2010) ("the subsidiary of a holding company carries on its business as an *investment* of the holding company, and not as an *agent* of the holding company.") (citations omitted, emphases in original). To the extent, however, that there is a rule against imputation to holding companies for purposes of jurisdiction, it does not pertain to Kolon's reorganization under the circumstances here.

*First*, as described above, Kolon regards the new Kolon Industries, Inc. as the judgment debtor, and the original defendant only became a holding company during the pendency of this case. The timing of the restructuring raises questions about Kolon's motivation, and the effect (if any) the reorganization should be given by the Court. *See, e.g.*, *Chambers v. Nasco, Inc.*, 501 U.S. 32, 44-45 (1991) (sanctioning defendant for *inter alia* attempting to frustrate the court's orders by moving property records to another state in an effort to deprive the court of diversity jurisdiction); *cf. McKinnon v. Talladega Cnty., Ala.*, 745 F.2d 1360, 1363 (11th Cir. 1984) ("this court might entertain jurisdiction over McKinnon's claim if there were evidence of efforts on the part of the defendants to evade the jurisdiction of the court") (citation and quotations omitted).

13

The Court should not afford Kolon any protection based upon its self-serving claims about its recent reorganization.

*Second*, Kolon Corporation is not the sort of holding company (such as a private equity shop with truly diversified holdings), that could legitimately distance itself from the conduct of its subsidiaries when it comes to personal jurisdiction. The court's opinion in *Bellomo v. Pennsylvania Life Co.*, 488 F. Supp. 744 (S.D.N.Y. 1980) is instructive. There, like Kolon Corporation here, the defendant Pennsylvania Life was a holding company that did not conduct business directly, but rather conducted business through its subsidiaries, including New York subsidiaries. The defendant argued that the New York subsidiaries could not be doing business in New York for Pennsylvania Life since Pennsylvania Life itself did no business. The court rejected that argument and found the *Frummer* test satisfied, since the subsidiaries' business constitutes the only business of the parent. The Court explained:

> Where a holding company is nothing more than an investment mechanism[—]a device for diversifying risk through corporate acquisitions[—]the subsidiaries conduct business not as its agents but as its investments. The business of the parent is the business of investment, and that business is carried out entirely at the parent level. *Where, on the other hand, the subsidiaries are created by the parent, for tax or corporate finance purposes, to carry on business on its behalf, there is no basis for distinguishing between the business of the parent and the business of the subsidiaries. There is a presumption, in effect, that the parent is sufficiently involved in the operation of the subsidiaries to become subject to jurisdiction.*

*Bellomo*, 488 F. Supp. at 746 (emphasis added); *see also Airtran New York, LLC v. Midwest Air Grp.*, 844 N.Y.S.2d 233, 241 (1st Dep't 2007) (same).

Here, Kolon confirms that Kolon Corporation and the "new" Kolon Industries, Inc. were formed for "tax or corporate finance purposes," and not to form the sort of holding company which might resist jurisdictional agency on the basis that it is engaged only passively with respect to diversified investments. *See* Exhibit 61 ("Following changes in corporate rules that

allowed Korean companies *to take advantage of tax incentives offered by the Korean government*, many publicly-traded Korean conglomerates (known in Korea as "*chaebols*") began to adopt holding company structures . . . .") (emphasis added).    Kolon Corporation's relationships with its operating subsidiaries are further described by Kolon in its 2011 annual report: "The Holding Company's primary role is to oversee[], manage[] business operations, management [and] foster general operations for the affiliated companies."    Exhibit 142 (translation at 10). Kolon further disclosed: "The Holding Company is a company that owns other companies' stocks, but the company's goal is to not simply own other company's stocks but to acquire the rights to exercise its authority to oversee the company as the majority owner of the stocks." *Id.* (translation at 34) (after distinguishing between a "pure holding company" and an "operating parent company," Kolon concluded: "[o]ur company is considered an operating parent company.").

Consequently, the conduct of its subsidiaries in relation to New York can readily be imputed to Kolon Corporation for purposes of establishing jurisdiction.

## IV.    KOLON IS SUBJECT TO THE COURT'S JURISDICTION

### A.    Kolon Holds Itself Out as Present in New York

Mr. Choi of Kolon Global testified at the hearing that the website screenshot reflected by Exhibit 233, which hosted the link to the brochure admitted as Exhibit 191, was not from a Kolon Global or Kolon I'Networks website. *See* May 1 Tr. at 157:5-24 ("This is a web site that Kolon I'Networks does not use. . . . Kolon Global also does not use this web site."). And Kolon confirmed that the website screenshot reflected by Exhibit 183 was from the website for the entire Kolon Group, kolon.com. *See* May 1 Tr. at 173:8-25.

Those Kolon materials (Exhibits 183 and 191) each tout an office in New York. Exhibit 191 (available for display and download as recently as July 29, 2012) is a brochure promoting

15

the Kolon Group, in which it describes Kolon I'Networks as providing "services for import-export of iron and steel products, energy resources, heavy chemicals, fashion, and industrial materials through 13 overseas depots, which include New York, London, Shanghai, and Osaka." Exhibit 191. According to Exhibit 183 (available for display and download as recently as July 28, 2012), Kolon touts its "worldwide network" as including "twelve subsidiaries and nineteen liaison offices outside Korea" and among them indicates the "New York Branch" of Kolon I'Networks Corp. at 262 W. 38th St. *See* Exhibit 183.[2]

In jurisdictional discovery in connection with this proceeding, Kolon did not produce any marketing materials mentioning New York or a New York branch or office. DuPont, however, (in addition to the publicly-available materials described above), obtained examples of them from non-parties pursuant to Rule 45 subpoenas. Akro-polychem, Inc. (a sales representative with respect to "old" and "new" Kolon Industries, Inc.'s products (*see* Joint Stip. ¶ 5)), Cooper Tire (a Kolon customer (*see* Joint Stip. ¶ 4)), and Michael Ahn (Kolon Global's independent contractor) each produced examples. *See* Exhibits 74, 75 & 130.

---

[2] After DuPont brought this turnover proceeding, Kolon removed Exhibit 191 from its website and deleted the reference to the "New York Branch" which had appeared on Exhibit 183. *See* Exhibit 235 & Joint Stip. ¶ 15; *compare* Exhibit 183 *with* Exhibit 232. Likewise, after DuPont brought this proceeding, Kolon deleted the reference to the New York branch of (the old) Kolon Industries, Inc. from the on-line biography of Chairman Lee. *Compare* Exhibit 186 *with* Exhibit 187.



The presentation attached to the e-mail at Exhibit 130 was produced by Mr. Ahn from his files. *See* Joint Stip. ¶ 17. It is a Kolon I'Networks-branded and Kolon Group-branded promotional brochure dated 2011, and indicates "New York" on a map entitled "Global Networks (15 branches)." *See* Exhibit 130.

    B.  Kolon Does Business in New York

Kolon does not only pretend to do business in New York, Kolon in fact does business with New York companies. For example, the "new" Kolon Industries, Inc. (and, prior to the December 2009 reorganization, Kolon Corporation (then the "old" Kolon Industries, Inc.)) sells

17

products to Magic Chemicals, Inc. of North Hills, New York (*see* Exhibits 55-58, 67-70) and receives payment from New York on the sales. *See* Joint Stip. ¶ 3.

Kolon ships products to Atlantic Paste & Glue Co. Inc. ("Atlantic Paste") in Brooklyn. For instance, in May 2012, the "new" Kolon Industries, Inc. shipped 114 pallets weighing 57 metric tons (over 125,000 pounds) of its Hikorez resin from Korea directly to Atlantic Paste in Brooklyn. *See* Exhibit 49.    Kolon purportedly supplies Atlantic Paste on behalf of Kolon's distributor, Palmer Holland, Inc. ("Palmer Holland"). *See* Joint Stip. ¶ 1.[3]

To finance one of its subsidiaries, Kolon USA, Inc. (*see* Exhibit K62), Kolon does business with Hana Bank New York Agency (*see* Exhibit 7) and Woori Bank New York Agency (*see* Exhibit 45).    For those arrangements, Kolon consented to New York choice of law, jurisdiction and venue. *See* Exhibit 7 at Hana 000087 & Exhibit 45 at WOORI 000009.

Through its fashion division FnC Kolon Corp. (*see* Joint Stip. ¶ 2), the "new" Kolon Industries, Inc. (and prior to the December 2009 reorganization, Kolon Corporation) does business with two New York fashion houses

22) and Marc Jacobs International, LLC.   *See* Exhibit 32.   Kolon has licensing and distribution deals with each, pursuant to which Kolon consented to New York arbitration and choice of law

---

[3] The Court should view with skepticism the motivations behind the Palmer Holland witness's testimony submitted on paper on behalf of Kolon.

provisions.                                                    7283 & Exhibit 32 at SDNY_KI00007238-

39, 7244. Both "new" and "old" Kolon Industries, Inc. personnel regularly traveled and continue

to regularly travel to New York to conduct that business. *See, e.g.*, Exhibits 107-118 & 120.

        C.     Kolon Global Corporation is Subject to the Court's Jurisdiction

        There can be no dispute that Kolon Global is subject to the Court's jurisdiction. Kolon

Global is registered to do business in New York, holds itself out as present in New York, and

does actual business beyond mere solicitation in New York.

        At the hearing, Kolon stated: "The facts are what they are, and they are not going to be

in dispute. Global is registered in New York. They were here; they had a physical office here

through 2007; they relocated, and have not had an office here since 2007. But, candidly, they

neglected to cancel their corporate registration." April 30 Tr. at 47:17-22. Mr. Choi testified that

Kolon Global is registered to do business in New York. *See* May 1 Tr. at 220:6-8 ("Yes, it is

registered."). Kolon Global first registered to do business in New York as Kolon International

Corp. in 2002 (as described below, when Kolon Industries, Inc. itself surrendered its New York

registration (*see* Exhibit 166)), it then updated the registration to Kolon I'Networks Corp. in

2006. *See* Exhibit 170 at 2. The registration identifies Kolon I'Networks' addresses as 262 West

38th Street and 525 7th Avenue in New York. *See* Exhibit 170.

        If Kolon Global no longer in fact maintains its New York office, it, like Kolon, certainly

holds itself out to the world as present in New York. Kolon Global's 2012 brochure (Exhibit

189) was available for download and display on Kolon Global's website as recently as February

2013. *See* Exhibit 176 & Joint Stip. ¶ 12. In the brochure, Kolon Global lists a New York office

at 262 West 38th Street, and displays a map of the world indicating the New York office. *See*

Exhibit 189 at 54-55. As with the above-described materials removed from the kolon.com

website, this brochure was taken down after DuPont brought this turnover application. *Compare*

19

Exhibit 176 *with* Exhibit 234; *see also* Joint Stip. ¶¶ 12-13. Kolon I'Networks continues to be listed in the yellow pages at the 38th Street location, with a Manhattan phone number, as a textile services wholesaler. *See* Exhibits 199 & 200.

Mr. Choi testified that Kolon Global closed the New York office in 2007. *See* May 1 Tr. at 210:6-10. Nevertheless, Kolon I'Networks' contracts with Mr. Ahn through 2012 (up until when DuPont brought this proceeding) obligate him to, among other things, "maintain the New York office," which is shown as located at 262 West 38th Street. *See* Exhibit 19; *see also* Joint Stip. ¶ 16. Mr. Choi also testified that the numerous continuing references to a "New York office" were meant to refer only to the natural person, Mr. Ahn, not to any actual office. *See* May 1 Tr. at 189:12-190:15 ("what is meant by office here is Min-Sik Ahn.").

Mr. Choi's testimony is not credible. The company's annual report for 2010, issued March 31, 2011, discloses a rented "Foreign Office" in New York and indicates the precise size of the office. *See* Exhibit 228 at T-000020. In 2011, Kolon Global mailed Mr. Ahn's contract to "the registered office address in New York." *See* Exhibit 216. And when opposing DuPont's first turnover application, a "new" Kolon Industries, Inc. executive (apparently unable to break the habit of pretending to have a New York office) even submitted a declaration (later recanted) claiming that Kolon Global "continues to conduct business in New York via an affiliated office located at 262 West 38th Street." *See* Exhibit 59 at ¶ 18; *see also* Joint Stip. at Appendix B.

Kolon Global's main business in the U.S. is selling fabric to I. Spiewak & Sons, Inc. ("Spiewak"), a New York uniform company. Over the last five years, Kolon Global has sold products to Spiewak on orders averaging more than twice a month. *See* Exhibits 240 & 241. Since at least 2000, Kolon Global has continuously maintained business with Spiewak. *See* May 1 Tr. at 242:21-243:20. Sales to Spiewak were originally made through Kolon Global's

20

predecessors, first Kolon International (the "company in charge of the trade business for the Kolon Group" (*see* Exhibit 141 at T-000004)), and then Kolon I'Networks after Kolon International merged into it in 2006, and since December 2011, Kolon Global. *See* May 1 Tr. at 245:21-23; *see also* Exhibit 241 & Exhibit 140 at 5.

To support the Spiewak account, Mr. Ahn interacts with Spiewak including by sending fabric samples to Korea for analysis in connection with developing fabrics for Spiewak, regularly visiting Spiewak's office, and handling customer complaints. *See* May 1 Tr. at 244:24-245:14; 249:6-16. Kolon Global personnel travel from Korea to New York to support the Spiewak account, including in relation to Spiewak's bids to supply uniforms to the New York City Police Department. *See, e.g.*, Exhibit 30 at SDNY_KGB00000532.

D.     Kolon Global Corporation is Kolon's Agent for Purposes of Jurisdiction

At the hearing, Kolon argued that Kolon Global's conduct cannot be imputed to "new" Kolon Industries, Inc.: "The product that Global is selling to Spiewak is sourced from an independent third-party manufacturer, and has never been sourced from Industries. Those sales benefit Global and do not benefit Industries in any way, and that really should answer and end the . . . inquiry." April 30 Tr. at 47:2-6. But whether or not sales to Spiewak benefit the "new" Kolon Industries, Inc. is of no moment.

*First*, as explained above, the defendant here is Kolon Corporation, which owns Kolon Global *and* the "new" Kolon Industries, Inc. With respect to Spiewak, the test is whether, in the absence of Kolon Global and Michael Ahn, the defendant, Kolon Corporation, would itself handle or cause another of its subsidiaries or agents to perform the services which are currently performed by Kolon Global and Michael Ahn. The evidence shows that (but for this turnover proceeding) it undoubtedly would.

21

Kolon has been selling to Spiewak for decades, and has done so through at least three different subsidiaries (Kolon International, Kolon I'Networks and Kolon Global) over the years. Kolon Global deliberated annually over whether it should maintain the "New York Office" and renew Michael Ahn's contract and each time concluded that it was "necessary," noting also that "[p]ossessing an office in the Americas has strategic implications for a company that aims to become a 'Global Total Service Company.'" *See* Exhibit 229 at SDNY_KGB00000567-68; *see also* Exhibit 29 at SDNY_KGB00000299.

*Second*, Kolon Global's and Michael Ahn's activities on behalf of Kolon are not limited to maintaining the Speiwak account. In fact, with respect to its New York-related activities and Mr. Ahn, Kolon Global continues to function as its predecessors (Kolon I'Networks and Kolon International) had, as the company "in charge of the trade business for the Kolon Group." *See* Exhibit 141 at T-000004. The "old" Kolon Industries, Inc. itself registered to do business in New York in 1999 (listing its office at 525 7th Avenue). *See* Exhibit 166. And its New York operations appear to long pre-date 1999.[4] Then, in 2002, when the "old" Kolon Industries, Inc. surrendered its registration, Kolon registered Kolon International to do business in New York, which active registration it then passed to Kolon I'Networks in 2006 (always listing an office at 525 7th Avenue). *See* Exhibit 166 & Exhibit 170. The obvious inference is that Kolon has used these successive subsidiaries (in its own stead) to continue its New York-related activities, and

_____

[4] Kolon regards its long-standing New York operations important enough to also feature in the company biographies of its senior-most leadership. For example, the on-line biography of Chairman Lee (until DuPont brought this application) indicated he was "[p]romoted to Director (at New York Branch of Kolon Ind., Inc.)" in 1985 (*compare* Exhibit 186 *with* Exhibit 187) and the on-line biography of Young Ho Bae (identified as "President & CEO of Kolon Industries, Inc.," indicates he "[m]oved to Kolon Ind., Inc. New York Branch" in 1976. *See* Exhibit 184.

22

would employ another representative to do the same if it was not for the presence of Kolon Global.

The Court need not rely on inferences. The evidence establishes that Kolon Global, through Mr. Ahn, continues to act as an agent for the Kolon Group of companies. For example, Mr. Ahn denied marketing *any* products on behalf of Kolon or Kolon Global other than maintaining the Spiewak account. *See* May 1 Tr. at 255:20-23. But the evidence shows that, in 2011, he was tasked with promoting steel exports, including specifically in relation to New York. *See* Exhibit 215 ("We have currently compiled a list of stainless related companies in New York and New Jersey . . . the current survey data is being gathered through an intensive research within the five states, with New York being its center piece . . . I think it would be good to send you the compiled list of companies sometime this week and discuss over the phone regarding the supplier contact process in detail starting next week."); Exhibit 216 ("I will try my best to create new business, including business in the steel industry"); Exhibit 130 ("Branch manager Ahn will be in charge of all the channels related to steel customers in the United States . . . we're hoping to revive the past glory of the New York branch").

Mr. Ahn also denied *ever contacting* any potential buyer of Miocell, which is a "new" Kolon Industries, Inc. mattress fabric product. *See* May 1 Tr. at 282:22-23; *see also* Exhibit 174. But that denial, too, is not credible. In April 2012, Kolon Global wrote to Mr. Ahn regarding Miocell to "propose a large project that will continue for a long period" and attaching a "brochure introducing Miocell in English." *See* Exhibit 208. The brochure is a Kolon Global-branded presentation which touts Miocell as a Kolon Industries, Inc. product and which proves that Kolon Global acts as a marketing agent for the other Kolon Group companies. *See* Exhibit 208. In June 2012, Mr. Ahn wrote to Kolon "[w]e're now meeting with each company,"

23

attaching a list of "mattress companies and bedding sites," which included a company located in Manhattan. *See* Exhibit 127. Then, on July 31, 2012, Mr. Ahn wrote: "[I] will probably go on a business trip to Texas around Sep 20, regarding Miocell. We have not received any response *from the companies we contacted*, so we are going to look into the company introduced to us by an acquaintance." Exhibit 213 (emphasis added).

Kolon Global's function as a trading agent for the Kolon Group of companies is significant. Mr. Choi testified that Kolon Global does not manufacture anything, but instead "buys and resells goods." May 1 Tr. at 228:19-21. Mr. Choi further testified that, in 2012, Kolon Global traded approximately US \$235 million worth of materials for other members of the Kolon Group (all owned by Kolon Corporation, the judgment debtor), with US \$75 million of that sum attributable to "new" Kolon Industries, Inc. products. *See* May 1 Tr. at 205:6-12; 227:10-19.

E.    The Exercise of Jurisdiction Over Kolon is Fair and Reasonable

At the hearing, Kolon argued "that this is a blatant case of forum shopping, and there is no proper jurisdictional basis to bring us here and we should be sent back to Virginia." April 30 Tr. at 36:18-21. But this complaint is immaterial to the jurisdictional inquiry.

Both parties are well aware that New York law incontrovertibly provides that foreign judgment debtors, subject to the jurisdiction of the New York courts, can readily be ordered to satisfy a judgment with assets located overseas. Kolon argues that this proceeding is improperly brought if DuPont is motivated by any such consideration. Yet Kolon so anxiously opposes this Court's exercise of jurisdiction, not because it is a stranger to New York or because it would be unfair or unreasonable or offend due process, but because Kolon would simply rather not be forced to make any meaningful payments towards satisfaction of the Judgment.

Neither of those arguments is properly considered here. The rule in this Circuit is that

24

neither party's choice-of-law considerations are to inform the Court's evaluation of the reasonableness of exercising personal jurisdiction. *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 574 (2d Cir. 1996) ("If choice-of-law considerations cannot be invoked by the defendant to demonstrate the unreasonableness of exercising jurisdiction, they likewise should not complicate our analysis of the plaintiff's interests in proceeding in [the forum].").

    This action does not multiply the burdens on the courts. The opposite is true. DuPont has registered the Judgment in numerous U.S. District Courts to enforce the Judgment through numerous garnishment proceedings and attendant non-party discovery in aid of execution. This was only necessary because Kolon refused to acknowledge its being subject to the jurisdiction of this Court, or the power of the Virginia Court to order it with respect to the disposition of property outside Virginia. Those proceedings generate substantial burdens on the courts and could be obviated by the relief DuPont seeks here. Additionally, there are currently five actions before this Court for turnover orders pursuant to N.Y. CPLR § 5225(b) against Korea-based banks which are subject to the Court's jurisdiction and known to hold substantial assets of Kolon. Those actions are stayed pending the outcome of this proceeding. The resolution of those cases will require the adjudication of complex and difficult issues, including, for purposes of N.Y. CPLR § 5225(b), what precisely are the roles of foreign bank secrecy laws and blocking statutes, and whether and to what extent "the separate entity doctrine" of New York banking law limits the courts' power in relation to post-judgment *in personam* orders against banks. If this Court exercises jurisdiction over Kolon, it could obviate the need for all of those proceedings.

    In any event, the exercise of jurisdiction over Kolon to require it to pay its judgment debt implicates no offense to the interests of fairness.

## Conclusion

For the foregoing reasons, the Court should exercise jurisdiction over Kolon and grant

DuPont's motion for a turnover order against Kolon Corporation and Kolon Industries, Inc.

pursuant to N.Y. CPLR § 5225(a).

Dated: New York, New York
      May 17, 2013

                                 Respectfully submitted,

                                 KOBRE & KIM LLP

                                 Michael S. Kim
                                 michael.kim@kobrekim.com
                                 Carrie A. Tendler
                                 carrie.tendler@kobrekim.com
                                 800 Third Avenue
                                 New York, New York 10022
                                 Tel:+1 212 488 1200

                                 Marcus J. Green
                                 marcus.green@kobrekim.com
                                 1919 M Street NW
                                 Washington, DC 20036
                                 Tel:+1 202 664 1900

                                 *Attorneys for E.I. du Pont de*
                                 *Nemours and Company*