FILED UNDER SEAL

CONTAINS INFORMATION DESIGNATED AS "CONFIDENTIAL" AND
"CONFIDENTIAL—ATTORNEYS' EYES ONLY"

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| E.I. du PONT de NEMOURS AND COMPANY, <br><br>                 Plaintiff, <br><br> v. <br><br> KOLON INDUSTRIES, INC. a/k/a KOLON CORPORATION, <br><br>                 Defendant. | Case No. 12-cv-08435-AJN <br><br> Hon. Alison J. Nathan |

## DEFENDANT'S POST-HEARING OPPOSITION BRIEF

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

PROCEDURAL BACKGROUND........................................................................................... 3

ARGUMENT ............................................................................................................................... 4

I.      APPLICABLE LAW ................................................................................................... 4

II.     DUPONT HAS FAILED TO ESTABLISH BY A PREPONDERANCE OF THE
EVIDENCE THAT JURISDICTION IN NEW YORK MAY BE EXERCISED
OVER INDUSTRIES ................................................................................................... 8

        A.     Industries' Actual Contacts with New York are Insufficient to Confer
Jurisdiction................................................................................................... 8

        B.     DuPont's Pretend Office Theory Holds no Water ............................. 12

III.    DUPONT HAS FAILED TO ESTABLISH BY A PREPONDERANCE OF THE
EVIDENCE THAT JURISDICTION IN NEW YORK MAY BE EXERCISED
OVER KCORP ........................................................................................................... 19

IV.    ASSERTING JURISDICTION OVER INDUSTRIES OR KCORP WOULD
VIOLATE DUE PROCESS....................................................................................... 24

V.     CONCLUSION.......................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Andros Compania Maritima S.A. v. Intertanker Ltd.*,
  714 F. Supp. 669 (S.D.N.Y. 1989)............................................................................7

*Angela Tese-Milner v. Diamond Trading Co.*,
  No. 04 Civ. 05203, 2010 U.S. Dist. LEXIS 143934 (S.D.N.Y. May 14, 2010),
  *vacated in part on other grounds by W.B. De Beers Centenary AG,* No. 11-4609-cv,
  2013 U.S. App. LEXIS 591 (2d Cir. Jan. 10, 2013)............................................6, 19

*Arrow Trading Co., Inc. v. Sanyei Corp. (Hong Kong), Ltd.*,
  576 F. Supp. 67 (S.D.N.Y. 1983)..............................................................................7

*Atl. Mut. Ins. Co. v. CSX Expedition*,
  No. 00 CIV 7668, 2002 WL 202195 (S.D.N.Y. Feb. 7, 2002)................................10

*Ball v. Metallergie Hoboken-Overpelt, S.A.*,
  902 F.2d 194 (2d Cir. 1990).......................................................................................4

*Bauman v. Daimler Chrysler Corp.*,
  644 F.3d 909 (9th Cir. 2011), *cert. granted*, No. 11-965, 2013 WL 1704716 (U.S.
  Apr. 22, 2013)............................................................................................................6

*Bellomo v. Pennsylvania Life Co.*,
  488 F. Supp. 744 (S.D.N.Y. 1980)..........................................................................23

*Citigroup v. City Holding Co.*,
  97 F. Supp. 2d 549 (S.D.N.Y. 2000)..........................................................................5

*Copterline Oy v. Sikorsky Aircraft Corp.*,
  649 F. Supp. 2d 5 (E.D.N.Y. 2007) .........................................................................10

*Data-Stream AS/RS Techs., LLC. v. Acequip Ltd.*,
  No. 02 Civ. 2098 (RWS), 2002 WL 1683736 (S.D.N.Y. July 24, 2002)................7

*Delagi v. Volkswagenwerk A.G.*,
  29 N.Y.2d 426 (1972) ................................................................................................9

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
  387 F. Supp. 2d 265 (S.D.N.Y. 2004)........................................................................4

*Gallelli v. Crown Imps., LLC*,
  701 F. Supp. 2d 263 (E.D.N.Y. 2010) .....................................................................22

TABLE OF AUTHORITIES
(continued)

Page(s)

*Ginsberg v. Government Properties Trust, Inc.*,
No. 07 Civ. 365, 2007 U.S. Dist. LEXIS 75771 (S.D.N.Y. Oct. 11, 2007) .....................21, 22

*Gurvey v. Cowan, Liebowitz & Latman, PC*,
No. 06 Civ. 1202, 2009 WL 691056 (S.D.N.Y. Mar. 17, 2009) .........................................6, 22

*H. McShan v. Omega Louis Brandt et Frere, S.A.*,
536 F.2d 516 (2d Cir. 1976)....................................................................................................9

*Helicopteros Nacionales de Columbia, S.A. v. Hall*,
466 U.S. 408 (1984)...........................................................................................................11, 24

*ICC Primex Plastics Corp. v. LA/ES Laminati Estrusi Termoplastici S.P.A.*,
775 F. Supp. 650 (S.D.N.Y. 1991) ...............................................................................9, 11, 18

*In re Rationis Enters., Inc. of Panama*,
261 F.3d 264 (2d Cir. 2001)..............................................................................................14, 18

*J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*,
131 F. Supp. 2d 544 (S.D.N.Y. 2001) ..................................................................................12

*Jazini v. Nissan Motor Co., Ltd.*,
148 F.3d 181 (2d Cir. 1998)...............................................................................................5, 6

*Koninklijke Philips Elecs. v. Digital Works, Inc.*,
358 F. Supp. 2d 328 (S.D.N.Y. 2005)..................................................................................10

*Landoil Res. Corp. v. Alexander &Alexander Servs., Inc.*,
918 F.2d 1039 (2d Cir. 1990)..................................................................................4, 5, 11, 18

*Loria & Wienhaus, Inc. v. H.R. Kaminsky & Sons, Inc.*,
495 F. Supp. 253 (S.D.N.Y. 1980).........................................................................................16

*MacInnes v. Fontainebleau Hotel Corp.*,
257 F.2d 832 (2d Cir. 1958)....................................................................................................14

*Mayatextil v. Liztex USA, Inc.*,
No. 92 Civ. 4528, 1995 WL 131774 (S.D.N.Y. Mar. 23, 1995) ...........................................18

*Meteoro Amusement Corp. v. Six Flags*,
267 F. Supp. 2d 263 (N.D.N.Y. 2003).................................................................................6, 20

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
84 F.3d 560 (2d Cir. 1996)......................................................................................................24

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Mones v. Commercial Bank of Kuwait, S.A.K.*,
    502 F. Supp. 2d 363 (S.D.N.Y. 2007) ...................................................................7

*New York Marine Managers, Inc. v. M.V. Topor-1*,
    716 F. Supp. 783 (S.D.N.Y. 1989)...............................................................16, 17

*Puerto Rico Mar. Shipping Auth. v. Almogy*,
    510 F. Supp. 873 (S.D.N.Y. 1981).....................................................................7

*Revlon, Inc. v. United Overseas Ltd.*,
    No. 93 Civ. 0863, 1994 WL 9657 (S.D.Y.Y. Jan. 12, 1994)............................17, 18

*Rolls-Royce Motors, Inc. v. Charles Schmidtt & Co.*,
    657 F. Supp. 1040 (S.D.N.Y. 1987), *disagreed with on other grounds by*
    *PT United Can Co. Ltd. v. Crown Cork & Seal Co.,* Inc., 138 F.3d 65, 71 (2d Cir.
    1998) ...............................................................................................11

*Royal & Sunalliance Ins. Co. v. Resolve Towing & Salvage, Inc.*,
    No. 00 Civ. 2473, 2000 WL 1801838 (S.D.N.Y. Dec. 7, 2000)...........................25

*Safety Software Ltd. v. Rivo Software, Inc.*,
    No. 11 Civ. 7433, 2012 WL 1267889 (S.D.N.Y. Apr. 11, 2012)....................15, 16

*Semi Conductor Materials, Inc. v. Citibank Int'l, Inc.*,
    969 F. Supp. 243 (S.D.N.Y. 1997)...................................................................12

*Steel v. Watch Hill Mgmt. Corp.*,
    No. 08-CV-1698 (GBD), 2009 WL 667242 (S.D.N.Y. Mar. 16, 2009)..................9

*Stemcor USA, Inc. v. Sharon Tube Co.*,
    No. 00 Civ. 9186, 2001 WL 492427 (S.D.N.Y. May 8, 2001)...............................9

*Sun Micro Med. Techs. Corp. v. Passport Health Commc'ns Inc.*,
    No. 06 Civ. 2083 (RWS), 2006 WL 3500702 (S.D.N.Y. Dec. 4, 2006) ..............5, 7

*Three Five Compounds, Inc. v. Scram Techs, Inc.*,
    No. 11 Civ. 1616, 2011 U.S. Dist. LEXIS 134530 (S.D.N.Y. Nov. 21, 2011) ......15

*Time, Inc. v. Simpson*,
    No. 02 Civ. 4917, 2003 WL 23018890 (S.D.N.Y. Dec. 22, 2003)........................25

*Unique Indus., Inc. v. Sui & Sons Int'l Trading Corp.*,
    No. 05-CV-2744, 2007 WL 3378256 (S.D.N.Y. Nov. 9, 2007).............................10

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

STATUTES AND RULES

N.Y. C.P.L.R.
   § 301.................................................................................................................... *passim*
   § 302......................................................................................................................1

Kolon Industries, Inc. ("Industries") and its parent company, Kolon Corporation ("KCorp") (collectively, "Kolon") respectfully submit this post-hearing brief in opposition to Plaintiff Judgment Creditor E.I. du Pont de Nemours & Company's ("DuPont" or "Plaintiff") memorandum in further support of its turnover motion ("Brief").  Based on the factual record and legal authorities, DuPont has failed to meet its burden to prove by a preponderance of the evidence that general personal jurisdiction exists over Industries or KCorp in New York. Accordingly, Kolon respectfully requests the Court to dismiss DuPont's motion for lack of personal jurisdiction.

## PRELIMINARY STATEMENT

For more than a year, DuPont has endeavored to establish this Court's jurisdiction over Kolon.  For more than a year, DuPont has failed.  Grasping for a theory on which to proceed, DuPont has forced Kolon and this Court to track a constantly moving target.  Initially, DuPont argued that Kolon consented to the Court's jurisdiction by specially appearing to oppose its restraint of Kolon's Korean bank accounts.  The Court disagreed.  Next, DuPont invoked New York's specific jurisdiction statute (C.P.L.R. § 302) based on Kolon's alleged participation in a meeting related to the underlying litigation.  This, too, failed.  DuPont then turned to New York's general jurisdiction statute (C.P.L.R. § 301).

Within that construct, DuPont has continued to try on and discard jurisdictional theories with alarming frequency.  In briefing before the evidentiary hearing, DuPont argued that Industries itself does substantial direct business in New York and that Kolon USA, Inc. ("KUSA"), a subsidiary of Industries, was an agent of Industries and/or KCorp for jurisdictional purposes.  DuPont asserted that Kolon Global Corporation ("Global") was also a jurisdictional agent of Industries and/or KCorp.  At the hearing before this Court, DuPont admitted that Industries' direct New York contacts are "not a compelling or overwhelming amount of contacts,

especially when we're asking [the Court] to exercise general jurisdiction" and that such contacts are "pretty thin." DuPont also dropped KUSA from its case. With nowhere else to go, DuPont unveiled its "pretend office" theory – that a foreign company that merely holds itself out in promotional materials as having a New York office can be subjected to general jurisdiction in New York. Now, in its post-hearing briefing, DuPont has shifted positions once again. It has apparently abandoned its argument that Global is an agent of Industries, focusing now only on KCorp, and it argues for the first time that KCorp is not actually a holding company.

Regardless of what theory DuPont espouses (or will espouse), the simple fact remains that this Court cannot properly assert personal jurisdiction in New York against Industries and/or KCorp. As DuPont admits, Industries' actual contacts with New York are not sufficiently continuous or systematic to warrant an exercise of jurisdiction. Exhibits 74 and 75, which purportedly evidence that Industries held itself out as having a New York office, do not tip the scales in DuPont's favor. Those exhibits remain unauthenticated for any purpose other than that they were produced to DuPont in discovery. They date from 2009 and 2010 and are thus irrelevant, as the Court must assess jurisdictional contacts as of May 17, 2012, the date this turnover proceeding was commenced. And these documents are at best ambiguous as to which Kolon entity supposedly had a New York office. ██████████████████████████████ ██████████████████████████████ Where there is no evidence that Industries actually had a New York office and actually transacted business out of such office and where Industries' contacts with New York are otherwise "thin," this Court should not exercise jurisdiction over Industries.

As regards KCorp, the record indisputably establishes that KCorp itself has had no contacts with New York. Instead, DuPont's theory rests entirely on the argument that Global

should be deemed KCorp's agent for jurisdictional purposes.  Yet, Global does business in New

York with exactly one customer, Spiewak, to the tune of about $300,000 a year.  That is less than

1/10 of 1% of Global's total annual revenues of $3.6 billion and an even smaller percentage of

the consolidated revenues of KCorp.  The Spiewak revenues are certainly not sufficiently

important to KCorp that if Global did not transact business with Spiewak, KCorp would

undertake to do so itself.  In any event, the uncontroverted evidence in the record establishes that

KCorp is a holding company, and it is not actively involved in the operations of Global.  Global

is not KCorp's agent for jurisdictional purposes.  DuPont's motion should be denied.

## PROCEDURAL BACKGROUND

On February 3, 2009, DuPont instituted an action against Industries in the Eastern

District of Virginia for misappropriation of trade secrets relating to Kevlar, a DuPont product.

On September 14, 2011, DuPont obtained a jury verdict against Industries for $919.9 million on

an unjust enrichment theory, which was calculated by charging to Industries all of DuPont's

development costs for Kevlar over a 30-year time period.  On May 17, 2012, DuPont

commenced this turnover proceeding in New York.  On May 17, 2013, the United States Court

of Appeals for the Fourth Circuit heard oral argument on Industries' appeal of the judgment in

the underlying trade secrets case, during which the panel raised substantial questions as to the

propriety of the judgment and, more particularly, the damages theory on which it was based.

## ARGUMENT

DuPont argues that the Court may exercise personal jurisdiction over the two entities that it claims are the judgment debtors, Industries and KCorp.[1]  DuPont is wrong.

## I.    APPLICABLE LAW

As an initial matter, DuPont does not contest, nor could it, that it has the burden of proving that personal jurisdiction exists over Industries and KCorp by a preponderance of the evidence.  Though a plaintiff need only make a *prima facie* showing of personal jurisdiction before any discovery takes place, since the Court held an evidentiary hearing, DuPont must demonstrate personal jurisdiction by a heightened standard of a preponderance of the evidence. *See Ball v. Metallergie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990).  And, unlike many of the pre-hearing cases on which DuPont relies, the Court is not to indulge all inferences or construe the evidence in the light most favorable to DuPont.  *See Landoil Res. Corp. v. Alexander &Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990).

DuPont asserts that jurisdiction over Industries and KCorp is proper under section 301 of New York's C.P.L.R.  "Pursuant to case law codified by section 301 of New York's [CPLR], an unlicensed foreign corporation is subject to the general personal jurisdiction of the courts of New York if such corporation is 'doing business' in the state." *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 271 (S.D.N.Y. 2004) (citations omitted).  A defendant corporation is deemed to be "doing business" in New York if it has engaged in "such a continuous and systematic course of 'doing business' here as to warrant a finding of its

---

[1] DuPont spends much time arguing that both Industries and KCorp are proper judgment debtors. Notably, the underlying judgment was obtained against only Kolon Industries.  In any event, the issue of the proper judgment debtor need not be addressed by this Court, as the sole issue here is whether either entity is properly amenable to general personal jurisdiction in New York.  As neither is, nothing further is required.

'presence' in this jurisdiction." *Landoil Res. Corp.,* 918 F.2d at 1043 (citations omitted); *see Sun Micro Med. Techs. Corp. v. Passport Health Commc'ns Inc.*, No. 06 Civ. 2083 (RWS), 2006 WL 3500702, at *6 (S.D.N.Y. Dec. 4, 2006). "Occasional" or "casual" contacts are insufficient to confer jurisdiction; rather, jurisdiction requires a fair degree of permanence and continuity. *See Landoil Res. Corp.*, 918 F.2d at 1043 (citation omitted); *Sun Micro Med. Techs.*, 2006 WL 3500702, at *6 (citations omitted). The test is a "'simple pragmatic one,'" which requires the court to "analyze a defendant's connections to the forum state 'not for the sake of contact-counting, but rather for whether such contacts show a continuous, permanent and substantial activity in New York.'" *Landoil Res. Corp.*, 918 F.2d at 1043 (citations omitted).

Factors courts consider to determine whether a foreign corporation is "doing business" include whether the defendant has an office, solicits business, owns property or bank accounts, and has employees or agents within the state. *See id.* (citation omitted). "However, the '[s]olicitation of business alone will not justify a finding of corporate presence in New York with respect to a foreign manufacturer or purveyor of services.'" *Id.*; *see also Citigroup v. City Holding Co.*, 97 F. Supp. 2d 549, 569 (S.D.N.Y. 2000). "[I]f the solicitation is substantial and continuous, and [the] defendant engages in other activities of substance in the state, then personal jurisdiction may properly be found to exist." *Landoil Res. Corp.*, 918 F.2d at 1043-44 (citations omitted). This is referred to as the "solicitation-plus" rule. *Id.* at 1044.

DuPont also relies heavily on the agency theory of jurisdiction. "[T]he presence of the subsidiary alone does not establish the parent's presence" in New York. *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998) (citation omitted). For jurisdictional purposes, "[t]o establish that a subsidiary is an agent of the parent, the plaintiff must show that the subsidiary 'does all the business which [the parent corporation] could do were it here by its own officials.'"

*Id.* (citation omitted).  "Courts have interpreted this to mean that the agent's activities in New York must be sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services."  *Angela Tese-Milner v. Diamond Trading Co.*, No. 04 Civ. 05203, 2010 U.S. Dist. LEXIS 143934, at *20 (S.D.N.Y. May 14, 2010) (citing *Jazini,* 148 F.3d at 184), *vacated in part on other grounds by W.B. David & Co. v. De Beers Centenary AG*, No. 11-4609-cv, 2013 U.S. App. LEXIS 591 (2d Cir. Jan. 10, 2013).  For example, in *Meteoro Amusement Corp. v. Six Flags*, the court rejected the plaintiff's argument that because the New York related revenues of defendant's subsidiary were three percent of the defendant/parents' total revenues, or a total of $30 million, defendant would feel compelled to enter the New York market if the subsidiary exited the market.  267 F. Supp. 2d 263, 270 (N.D.N.Y. 2003).  As the court held, "the relevant inquiry is not whether the amount of revenue generated by a subsidiary exceeds a certain threshold, but instead whether said revenue, relative to the overall revenue generated by the parent, is large enough that the parent would enter the market in the absence of the subsidiary in order to make up for the financial loss."  *Id*; *see also Angela Tese-Milner*, 2010 U.S. Dist. LEXIS 143934, at *23-24 (no personal jurisdiction over parent where eight out of eighty-three of the subsidiary's customers were in New York).[2]

In analyzing whether agency exists, New York courts also look to "whether the subsidiaries are carrying out their own business or that of the parent."  *Gurvey v. Cowan, Liebowitz & Latman, PC*, No. 06 Civ. 1202, 2009 WL 691056, at *4 (S.D.N.Y. Mar. 17, 2009)

---

[2] The agency theory of jurisdiction on which DuPont relies has not been recognized by the majority of other federal circuit courts and soon will be addressed by the Supreme Court of the United States, which recently accepted certiorari in a case from the Ninth Circuit, *Bauman v. Daimler Chrysler Corp.*, 644 F.3d 909 (9th Cir. 2011), *cert. granted*, No. 11-965, 2013 WL 1704716 (U.S. Apr. 22, 2013), specifically to address whether this very theory of agency jurisdiction comports with federal due process.

- 6 -

(no jurisdiction over a holding company since the subsidiary was carrying out its own business).

DuPont does not contest that this Court must assess jurisdictional contacts as of May 17, 2012, which is when DuPont instituted this turnover proceeding.  It is well-established in New York that the "relevant time period for the jurisdictional inquiry . . . is at the time of service of the summons and complaint," and not when the claim arose.  *Sun Micro Med. Techs. Corp.*, 2006 WL 3500702, at *6 (citations omitted).  In other words, the foreign defendant "must be shown to have been 'doing business' in New York when the action was commenced."  *Arrow Trading Co., Inc. v. Sanyei Corp. (Hong Kong), Ltd.*, 576 F. Supp. 67, 69 (S.D.N.Y. 1983) (citations omitted).  Accordingly, courts have consistently held that the relevant time frame for assessing jurisdictional contacts is the time at which the New York action commenced, and alleged contacts that do not show ongoing and continuous business activity at that time are not relevant.[3]

Significantly, the timing requirement for jurisdictional contacts applies to the agency theory of personal jurisdiction.[4]  Likewise, in the context of a turnover proceeding, the relevant time frame for assessing jurisdictional contacts is the time at which the New York portion of the turnover proceeding began.  *See Mones v. Commercial Bank of Kuwait, S.A.K.*, 502 F. Supp. 2d 363, 371-72 (S.D.N.Y. 2007) (restricting the analysis of defendant's contacts with New York to

---

[3] *See Data-Stream AS/RS Techs., LLC v. Acequip Ltd.*, No. 02 Civ. 2098, 2002 WL 1683736, at *6 (S.D.N.Y. July 24, 2002) (alleged agent "ceased his activities . . . almost a year before this suit was commenced" and therefore, "his activities [were] irrelevant for purposes of the 'doing business' inquiry"); *see also Andros Compania Maritima S.A. v. Intertanker Ltd.*, 714 F. Supp. 669, 672 (S.D.N.Y. 1989) (since defendant had stopped engaging in "active business activity" here by 1986 – the time the complaint was filed – the plaintiff's allegations from the early 1980's were not relevant); *Arrow Trading Co.,* 576 F. Supp. at 69 (restricting the analysis of the relevant jurisdictional contacts to after March of 1981 when the complaint was filed).

[4] *See Data-Stream AS/RS Techs., LLC*, 2002 WL 1683736, at *6-7 (finding the agency theory did not confer jurisdiction over a foreign corporation where the foreign corporation no longer had a subsidiary at the time the action commenced); *Puerto Rico Mar. Shipping Auth. v. Almogy*, 510 F. Supp. 873, 878 (S.D.N.Y. 1981) (plaintiff could not attribute the subsidiary's pre-complaint actions in New York to the defendant for jurisdictional purposes).

December 2003, which is when the plaintiff filed its turnover petition in New York).

## II.    DUPONT HAS FAILED TO ESTABLISH BY A PREPONDERANCE OF THE EVIDENCE THAT JURISDICTION IN NEW YORK MAY BE EXERCISED OVER INDUSTRIES

### A.    Industries' Actual Contacts with New York are Insufficient to Confer Jurisdiction

DuPont has repeatedly admitted, as it must, that Industries' so-called "direct contacts" with New York are woefully insufficient for purposes of establishing general jurisdiction over Industries.  In his closing argument, counsel for DuPont stated, "I told you in the beginning candidly, you know, if we were here just arguing based on just the direct contacts of Industries to New York, it is not a compelling or overwhelming amount of contacts, especially when we're asking you to exercise general jurisdiction . . ."  (Tr. 338:1-5.)  Counsel reiterated that, "[t]o be frank, I think if it were just the contacts that Industries had with New York that is in the factual stipulation, I think it is **_pretty thin_**."  (Tr. 343:9-11 (emphasis added).)  Indeed, this Court recognized as such when after counsel listed Industries' New York contacts, the Court observed that, "those sounded like minimum contacts to me.  Those sound like the kind of arguments you would make in the context of specific jurisdiction."  (Tr. 343:2-4.)

DuPont admitted that Industries' actual contacts with New York are not "compelling or overwhelming" and are "pretty thin."  The sum total of the evidence of such contacts, whether before or after the 2009 corporate reorganization, is as follows:

1.    Industries conducts business with Palmer Holland Company, an independent distributor that has been in business for ninety years and is based in Ohio.  Palmer Holland purchases products from Industries, takes title to such products in Korea before shipping and then resells them to a Palmer Holland customer in New York, Atlantic Paste and Glue Co. ("Atlantic").  (Joint Stip. ¶ 1a-c.)  On occasion, at the request of Palmer Holland, Industries ships

product directly to Atlantic.  (*Id.*)  That Industries sells goods to Palmer Holland, who resells to a

New York based company, and that Industries occasionally ships goods directly to Atlantic at

Palmer Holland's request are irrelevant for jurisdictional purposes.  *See H. McShan v. Omega*

*Louis Brandt et Frere, S.A.*, 536 F.2d 516, 517-18 (2d Cir. 1976); *Steel v. Watch Hill Mgmt.*

*Corp.*, No. 08-CV-1698 (GBD), 2009 WL 667242, at *4 (S.D.N.Y. Mar. 16, 2009) ("The mere

shipment of goods into New York 'does not ipso facto constitute doing business' for purposes of

CPLR § 301."); *Delagi v. Volkswagenwerk A.G.*, 29 N.Y.2d 426, 430-33 (1972) (jurisdiction did

not exist over a foreign corporation when the foreign corporation's subsidiary sold products to a

New York distributor and the New York distributor then resold the products in New York).[5]

       2.     Industries engages in an insignificant amount of business with a company

called Magic Chemicals, Inc.  While Magic Chemicals lists a New York address and remits

payment to Industries from New York, Industries ships all product to Magic Chemicals in Kenya

and Tanzania.  The sum total of the sales to Magic Chemicals that are in the evidentiary record

are roughly a total of $134,000 over 2010 and 2011.  (Exs. 55 to 58.)  Given that Industries'

annual revenues are approximately $4 billion, the Magic Chemicals sales have no significance.

*See Stemcor USA, Inc. v. Sharon Tube Co.*, No. 00 Civ. 9186, 2001 WL 492427, at *1-2

(S.D.N.Y. May 8, 2001) (company that "invoiced to and shipped to customers in New York" was

not subject to personal jurisdiction where the sales were "too insubstantial to reflect the degree of

permanent and substantial activity required for jurisdiction under Section 301"); *see also ICC*

*Primex Plastics Corp. v. LA/ES Laminati Estrusi Termoplastici S.P.A.*, 775 F. Supp. 650, 654

(S.D.N.Y. 1991) (defendant's New York sales, constituting ten percent of total revenues, among

---

[5] DuPont neglected to offer any evidence of record as to the value of such shipments during the
relevant time frame, wholly failing to satisfy its burden of demonstrating continuous and
systematic business activity.

other activities, failed to satisfy preponderance of the evidence burden to establish jurisdiction); *Unique Indus., Inc. v. Sui & Sons Int'l Trading Corp.*, No. 05-CV-2744, 2007 WL 3378256, at *3 n.4 (S.D.N.Y. Nov. 9, 2007) ("When less than 5% of a company's revenue attributes to its business in the forum state, general jurisdiction is normally denied."); *Copterline Oy v. Sikorsky Aircraft Corp.*, 649 F. Supp. 2d 5, 17 n.11 (E.D.N.Y. 2007) ("[S]ales that represent less than five percent of a company's overall revenue are not substantial.").

        3.      Industries employees took approximately two trips a year to New York and purchased an insubstantial amount of product from New York.  FnC Kolon Corp. ("FnC"), which has been a division of Industries since December 31, 2009, ███████████████

████████████████████████████████████████████████████████████

███████████████  (Joint Stip. ¶ 2; Exs. 21, 22.)  In April 2011, Industries renewed FnC's Distribution Agreement with Marc Jacobs, a New York company.[6]  (Ex. 32.) FnC/Industries buyers visit Marc Jacobs showrooms in New York approximately twice a year. (Exs. 108-118, 120 (visits in February 2009, June 2010, February 2011, June 2011, February 2012, and September 2012).)  Additionally, FnC has purchased some goods from John Varvatos and Marc Jacobs.  (Exs. 108-118, 120.)

     These activities are not significant.  As the Supreme Court has made clear, purchases

---

[6] ████████████████████████████████████████████████████████████

████████  (Exs. 21, 22, and 32.)  This fact has no significance for purposes of establishing general jurisdiction over Industries, as courts consistently have recognized that such provisions do not evidence a defendant's consent to general personal jurisdiction over unrelated disputes with third parties not governed by the specific contract.  *See Koninklijke Philips Elecs. v. Digital Works, Inc.*, 358 F. Supp. 2d 328, 332-33 (S.D.N.Y. 2005) (noting that a choice of law provision in a contract was insufficient to confer personal jurisdiction over a foreign defendant); *Atl. Mut. Ins. Co. v. CSX Expedition*, No. 00 CIV 7668, 2002 WL 202195, at *3 (S.D.N.Y. Feb. 7, 2002) ("[I]t cannot be said that the arbitration clause in HMD's contract with CSX Lines, which names New York as the chosen site for arbitration, is a proper basis for conferring jurisdiction pursuant to § 301.").

- 10 -

made in the forum state are not considered in the jurisdictional analysis.  *See Helicopteros*

*Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 418 (1984) ("mere purchases, even if

occurring at regular intervals, are not enough to warrant" general jurisdiction).  Courts within the

Second Circuit also do not consider purchases of products in New York when conducting a

C.P.L.R. § 301 analysis.  *See Rolls-Royce Motors, Inc. v. Charles Schmidt & Co.*, 657 F. Supp.

1040, 1044-45 (S.D.N.Y. 1987) (general jurisdiction did not exist over a foreign defendant who

traveled to New York "at least once a month for several years primarily to buy used cars" though

these purchases comprised a substantial portion of defendant's sales), *disagreed with on other*

*grounds by PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 71 (2d Cir.

1998).  As the court explained in *Rolls Royce*, "the law in New York was clear that purchases in

New York by a foreign defendant corporation of a major share of the merchandise to be sold at

its place of business outside the state, even if systematic and made upon visits occurring at

regular intervals, do not warrant a finding that the defendant was present within the jurisdiction

of New York."  *Rolls-Royce Motors*, 657 F. Supp at 1046 (citations omitted).

Likewise, it is well established that occasional trips to New York by a foreign company's

employees are not sufficient to create personal jurisdiction.  In *Landoil Res. Corp.*, the Second

Circuit held that occasional visits to New York to solicit business – there, thirteen business trips

over a period of eighteen months – were not sufficient to establish a systematic and continuous

presence in New York.  918 F.2d at 1045; *see also ICC Primex Plastics Corp.*, 775 F. Supp. at

654 (plaintiff failed to show by a preponderance of the evidence that the foreign corporation was

doing business in New York even though it solicited business in New York, made sales to New

York customers through telephone solicitations, and its employees occasionally visited

customers and trade shows in New York).  Clearly then, two trips a year to New York by

Industries' personnel cannot satisfy DuPont's burden of proof.

4. While Industries does not maintain accounts in any New York bank, Industries guarantees two lines of credit for its subsidiary, KUSA – a New Jersey corporation – at Korean banks that have branch offices in New York. Specifically, Industries is the guarantor on lines of credit for KUSA at Hana and Woori banks. (Exs. 7, 45.) "[T]he existence of a bank account in New York is generally not sufficient to confer personal jurisdiction over a foreign defendant," unless the plaintiff can show that the defendant conducted substantially all of its business through the New York bank account. *J.L.B. Equities, Inc. v. Ocwen Fin. Corp.,* 131 F. Supp. 2d 544, 548 (S.D.N.Y. 2001) (citation omitted); *see Semi Conductor Materials, Inc. v. Citibank Int'l, Inc.*, 969 F. Supp. 243, 246 (S.D.N.Y. 1997) (foreign defendant's maintenance of four active bank accounts in New York office and the use of one of those accounts to receive fees did not constitute "doing business" under § 301). Here, Industries neither maintains an actual account with a New York bank nor can it be shown that it conducts a substantial part of its business through a New York bank. Hence, its credit guarantees are of no jurisdictional significance.

## B.     DuPont's Pretend Office Theory Holds no Water

Faced with the indisputable fact that Industries' New York contacts are at best "thin," underwhelming, and certainly not "continuous and systematic," DuPont is left to push its new "pretend office" theory. DuPont argues that because Industries allegedly held itself out to the world that it has a New York office and "borderline actual business contacts" with New York, this Court may exercise personal jurisdiction over it. (Brief at p. 2.) Indeed, DuPont posits that "purposely holding oneself out as present in New York can alone result in legal presence for purposes of jurisdiction." (*Id.*) DuPont's position should be rejected on a number of levels.

First, there is no actual evidence in the record that this Court may consider that

establishes that Industries held itself out to anybody, let alone the world, that it had a New York office on or about May 17, 2012, the relevant time for assessing Industries' jurisdictional contacts.  DuPont's holding out theory with respect to Industries rests exclusively on DuPont Exhibits 74 and 75.[7]  Yet, this Court ruled during the hearing after objection by Industries and extensive argument that such documents have been authenticated only to the extent that they were produced in discovery to DuPont from third parties.  (Tr. 147:14-148:10.)  Even DuPont recognized the very limited purpose for which Exhibits 74 and 75 were admitted into evidence:

> THE COURT:  That is to say, it is authenticated solely for that purpose, that is to say, you're establishing not that it is what it purports to be on its face, but that it is a document, whatever it purports to be, that you received? That is your position?
>
> MS. TENDLER:  Correct, your Honor.

(Tr. 140:24-141:4.)

Since DuPont has failed to establish that Exhibits 74 and 75 are what they "purport to be" on their face, there is no competent evidence in the record that Industries held itself out to anyone as having a New York office.  The fact that Exhibits 74 and 75 were produced by third parties to DuPont in discovery is of no moment without proper authentication.  Thus, for that reason alone, this Court should reject DuPont's pretend office theory with respect to Industries.

But that is not all.  Assuming that DuPont can surmount the authentication hurdle, which it cannot, Exhibits 74 and 75 are irrelevant as they date from 2009 and 2010.  There is no evidence in the record that any such presentations were distributed to anyone at any subsequent time, let alone on or about May 17, 2012, the relevant date for this Court's jurisdictional inquiry.  As such, the Court should not consider such exhibits.  *See* cases collected at pp. 7-8, *supra.*

---

[7] All of the other "holding out" evidence in the record relates to Global or its predecessor, I'Networks, and does not in any fashion concern Industries.  (*See, e.g.*, Exs. 130, 183, 186, 191.)

Further, Exhibits 74 and 75 are, at best,  Exhibits 74 and 75 certainly do not trumpet in an

unambiguous manner that Industries supposedly had a New York office in 2009 and 2010, let

alone in or about 2012, as would be required to establish jurisdiction here.

But even assuming that Exhibits 74 and 75 have been properly authenticated, that they

are relevant as to their dates, and that they are unambiguous, all conclusions which this Court

should not make, as a matter of law, there still should be no jurisdiction in New York over

Industries.  The Second Circuit has held that "[w]hile a local office may constitute a 'continuous

and systematic' contact sufficient to allow a court to hold that a defendant subjected itself to the

general jurisdiction of the forum state, the presence of such an office is not dispositive."  *In re

Rationis Enters., Inc. of Panama*, 261 F.3d 264, 270 (2d Cir. 2001) (internal citations omitted).

*MacInnes v. Fontainebleau Hotel Corp.*, 257 F.2d 832, 834-35 (2d Cir. 1958) is

instructive.  There, defendant operated a hotel business in Miami.  It also maintained an office in

New York City with three employees, whose function was to receive requests for reservations,

which were forwarded to Florida for confirmation, to answer inquiries, and to distribute

brochures.  Defendant's name was listed in the telephone and building directory and on the door

of its New York office.  *Id.* at 834.  Notwithstanding these facts, the Second Circuit concluded

that defendant was not doing business in New York for jurisdictional purposes.  *Id.* at 834-35.

In short, when a defendant maintains an actual office in New York, under the established

law of the Second Circuit, that fact is not dispositive that the defendant is "doing business" in New York.  By definition, then, if a defendant merely holds itself out as having a New York office, such fact cannot possibly require a finding that the defendant is present in New York for jurisdictional purposes.

    *Three Five Compounds, Inc. v. Scram Techs, Inc*., No. 11 Civ. 1616, 2011 U.S. Dist. LEXIS 134530 (S.D.N.Y. Nov. 21, 2011) is consistent with the Second Circuit's jurisprudence. There, plaintiff alleged that an employee of defendant met with plaintiff in New York City, presented plaintiff with a business card with a New York office address, and stated that he conducted business for defendant at such New York address.  In declining to exercise jurisdiction over defendant under C.P.L.R. § 301, the Court stated that there was no evidence that defendant actually leased or owned an office in New York.  The court then held that, "the Court certainly cannot hold that [the employee's] representation alone suffices to establish general jurisdiction because even 'the presence of . . . an office is not dispositive.'"  2011 U.S. Dist. LEXIS 134530, at *45 (quoting *In re Rationis Enters., Inc. of Panama*, 261 F. 3d at 270).

    Likewise, in *Safety Software Ltd. v. Rivo Software, Inc.*, plaintiff alleged that defendant held itself out as doing business in New York and trumpeted a New York address in e-mail solicitations that defendant sent to clients.  No. 11 Civ. 7433, 2012 WL 1267889 (S.D.N.Y. Apr. 11, 2012).  While defendant never actually assumed a New York office, it maintained a small mail and package receipt and forwarding arrangement in New York for eighteen months.  *Id.* at *2.  In granting a motion to dismiss under Rule 12(b)(2), the court stated that "there is no evidence that [defendant] actually transacted business from the [mail drop address], solicited customers from that address, held the lease for or paid rent for that address or used the space itself to conduct business."  *Id.* at *3 n.3.  The court also found that "[l]isting a New York

address on an email" was insufficient to establish jurisdiction where plaintiff "present[ed] no evidence that the defendant is named on the lease, pays rent, or has used and is using the space for its own purposes." *Id.* at *3; *see Loria & Wienhaus, Inc. v. H.R. Kaminsky & Sons, Inc*., 495 F. Supp. 253, 257 (S.D.N.Y. 1980) ("The New York address listed on the defendant's stationery does not establish that the company actually had an office in the state. . . . The plaintiff presents no evidence that the defendant is named on the lease, pays rent, or has used and is using the space for its own purposes.").

Here, unlike the defendant in *Safety Software*, during 2009 and 2010, Industries did not even have a New York presence. Likewise, DuPont presented no evidence that Industries actually transacted business from a New York office or solicited customers from any such office.

DuPont's reliance on *New York Marine Managers, Inc. v. M.V. Topor-1* and its progeny is misplaced. In *New York Marine Managers*, defendant Ektrans claimed in a brochure distributed by an affiliate that it had a New York office. 716 F. Supp. 783, 785 (S.D.N.Y. 1989). The brochure provided the exact address, telex number and telephone numbers of the office. The general counsel of Ektrans initially testified at an evidentiary hearing that Ektrans had no New York office, but then indicated that Ektrans' New York address was the office of another affiliate, Ekco, which was a New York corporation with an office in the Empire State Building. *Id.* According to the Court, "the fact that Ektrans, a related company under common control, listed Ekco's office as its own is strong evidence—for purposes of determining jurisdiction—that Ektrans used Ekco as its New York agent." *Id.* at 786 (citations omitted). In finding that Ekco was Ektrans' agent for jurisdictional purposes, the Court also underscored the fact that Ektrans used Ekco as an American collection and disbursement office for Ektrans. In addition, the court concluded that Ektrans had no choice but to use a surrogate if it wanted to do business in New

- 16 -

York, as Ektrans' general counsel testified that under Turkish law, it was illegal for Ektrans (a Turkish entity) to do business in New York.  *Id.*[8]

*New York Marine Managers* thus does not, as DuPont would have it, stand for the overarching principle that when a foreign company holds itself out as having a New York office, it is subject to jurisdiction in New York regardless of whether it actually has an office.  Instead, that decision related solely to jurisdictional agency, and the fact that Ektrans held itself out as having a New York office, which actually belonged to an affiliate, was merely *evidence* that the affiliate was Ektrans' agent.  Accordingly, *New York Marine Managers* is inapplicable to DuPont's claims regarding Industries.

*Revlon, Inc. v. United Overseas Ltd.*, a case upon which DuPont relies, is also inapposite.  No. 93 Civ. 0863, 1994 WL 9657 (S.D.N.Y. Jan. 12, 1994).  There, defendant UOL, a foreign corporation, moved to dismiss pursuant to Rule 12(b)(2).  Plaintiff presented evidence that a UOL sign was displayed at the entrance of the New York office of a UOL subsidiary, that an executive officer represented to customers that such office was UOL's New York office, that an individual who solicited business on behalf of UOL used stationery listing such office as UOL's New York office, that such individual, in fact, solicited business for UOL from the New York office, and that executive officers of UOL used the New York office to conduct business when in New York.  *Id.* at *2.  The court held that such "allegations" adequately made out a *prima facie* case that UOL was doing business in New York sufficient for the exercise of jurisdiction over it. *Id.*  Those facts, are, of course, a far cry from DuPont's holding out claim against Industries, which is based only on two unauthenticated, outdated, and ambiguous documents.  In *Revlon*,

---

[8] To underscore the many salient distinctions from our case, it would be as if Global distributed brochures in which Industries (or KCorp) held themselves out as having a New York office, listing Global's office as its own, coupled with evidence that Industries or KCorp actually used Global to perform services on its behalf in New York.

UOL effectively had and used an actual New York office.

    After the court reached its holding in *Revlon*, relying exclusively on *New York Marine Managers*, the court stated that, "even if a foreign corporation does not actually maintain an office in New York, if it holds itself out to the public as having one, such corporation will be deemed 'doing business' in New York." *Id.* Not only was that statement *in dicta*, but it misconstrued the holding of *New York Marine Managers*, which concerned whether the fact that a foreign company held itself out as having a New York office, which in actuality belonged to an affiliate, was evidence of jurisdictional agency between the foreign company and its affiliate. The court also ignored the established law of this Circuit that actually maintaining a New York office, as opposed to merely holding oneself out as having a New York office, is not dispositive of "doing business" in New York. *See In re Rationis Enters., Inc. of Panama*, 261 F. 3d at 270.[9]

    Accordingly, even if this Court credits Exhibits 74 and 75, which it should not, ██████ ████████████████████████████████████████████████ cannot lead to general jurisdiction over Industries in New York when there is no evidence that Industries had an actual New York office during the relevant time period and transacted business from that office. This is particularly so given Industries' minimal actual contacts with New York.[10] DuPont has failed to

---

[9] DuPont's reliance on *Mayatextil v. Liztex USA, Inc.* should hold no weight here for the exact same reasons. No. 92 Civ. 4528, 1995 WL 131774 (S.D.N.Y. Mar. 23, 1995). There, the same court that issued the *Revlon* decision again misconstrued the holding of *New York Marine Managers* and neglected to account for the law of the Second Circuit that having an actual office is not jurisdictionally dispositive. In any event, the case is wholly distinguishable since the Court resolved all existing doubts in the plaintiffs' favor, applying a *prima facie* standard, and the defendant there was found to have leased an actual office in New York and to have a New York bank account. *Id.* at *3.

[10] *See Landoil Res.*, 918 F.2d at 1043-44 (finding no personal jurisdiction by a preponderance of the evidence where defendant went on thirteen business trips over eighteen months to solicit business here, and placed insurance risks and received "substantial revenue" from New York transactions); *ICC Primex Plastics*, 775 F. Supp. at 653-54 (record did not prove by a preponderance of the evidence that a foreign corporation was doing business here where its New

- 18 -

satisfy its burden of proof that Industries is subject to personal jurisdiction in New York.

### III.   DUPONT HAS FAILED TO ESTABLISH BY A PREPONDERANCE OF THE EVIDENCE THAT JURISDICTION IN NEW YORK MAY BE EXERCISED OVER KCORP

DuPont has apparently abandoned any attempt to argue that Global is an agent of

Industries for jurisdictional purposes.  Indeed, the evidence indisputably established that it is not.

Instead, DuPont argues "whether or not sales to Spiewak [a Global customer] benefit the 'new'

Kolon Industries, Inc. is of no moment."  (Brief at p. 21.)  According to DuPont, "[w]ith respect

to Spiewak, the test is whether, in the absence of Kolon Global and Michael Ahn, the defendant,

Kolon Corporation, would itself handle or cause another of its subsidiaries or agents to perform

the services which are currently performed by Kolon Global and Michael Ahn."  (*Id.*)  DuPont

makes such argument because the record is entirely devoid of any evidence that KCorp has any

direct contacts with New York.

DuPont's formulation is a rough restatement of the law that an "agent's activities in New

York must be sufficiently important to the foreign corporation that if it did not have a

representative to perform them, the corporation's own officials would undertake to perform

substantially similar services."  *Angela Tese-Milner*, 2010 U.S. Dist. LEXIS 143934 at *20

(citation omitted).

Under any measure, DuPont has utterly failed to establish that Global and/or Ahn's New

York activities meet this test with regard to KCorp.  As DuPont concedes, Global has one and

only one contact with New York.  Global sells anywhere from $280,000 to $300,000 a year of

goods to Spiewak, a company located in New York.  Ahn considered making sales on behalf of

Global relating to steel and Miocell, but Ahn never made a single sale of such materials to

---

York contacts included soliciting business by mail and telephone; receiving 10% of its sales from
New York customers; attending trade shows; and distributing promotional materials here).

anyone, let alone a New York customer.  (Tr. 271:14-21; 279:5-280:25.)  Given that Global's

total revenues are in the range of $3.6 billion (Tr. 198:7-12), Global's Spiewak sales are, at best,

a *de minimis* percentage (less than 1/10th of 1%) of Global's total sales.  Relative to KCorp's

consolidated revenues, the Spiewak sales are obviously an even smaller percentage.  If Global

did not sell to Spiewak and Ahn stopped performing his minimal services, KCorp would not feel

compelled to take on the Spiewak account and Ahn's activities or have another subsidiary do

so.[11]  *See Meteoro Amusement Corp.*, 267 F. Supp. 2d at 270 (subsidiaries' sales amounting to

3% of defendant parent's revenues were insufficient to establish agency for jurisdictional

purposes).  Global is not KCorp's agent for jurisdictional purposes.  And, that Global itself could

possibly be considered to be doing business in New York is irrelevant.[12]

   In furtherance of its effort to argue that Global is KCorp.'s agent for jurisdictional

purposes, DuPont also makes the entirely novel argument that if Global did not "serve the

purpose . . . Kolon Corporation [would] have held out some other member of the Kolon Group as

present in New York . . ." (Brief at pp. 2; 22-23.)  During the hearing, DuPont did not even

attempt to ascribe a value to KCorp of a real or pretend New York office of Global or of another

KCorp subsidiary.  There is no evidence in the record that Spiewak or any other customer of any

KCorp subsidiary cares a wit about an office in New York, let alone one merely reflected in

promotional materials.  Given that Global's total New York sales are in the $300,000 annual

---

[11] DuPont has cited no authority, nor is there any, for the proposition that in assessing potential agency, a court should look to see whether a foreign parent corporation would have another subsidiary – as opposed to itself – perform a New York based function if an existing subsidiary performing such function ceased to do so.

[12] Nor does the record support DuPont's assertion that Global acts as the marketing and trading arm of the "Kolon group" of companies.  (*See* Brief at pp. 22, 24.)  The only witness examined on the subject, Mr. Choi, specifically denied that Global markets products for other Kolon companies.  (Tr. 233: 11-19).  Further, for jurisdictional purposes, DuPont must establish that Global is performing such services in New York during the relevant time frame, and the record is completely devoid of any evidence to this effect.

range, New York holds little significance to KCorp.[13]

The law, of course, requires proof that the actual revenues generated in New York by KCorp's purported agent are of sufficient importance that KCorp would feel obliged to enter New York in the absence of its agent.  Even the broadest tenets of jurisdictional agency law cannot be stretched as DuPont suggests to base a jurisdictional finding on the notion that a parent would constructively hold itself out as being present in New York if its purported agent were unable to do so.  That DuPont would prefer to avoid an analysis of Global's actual (de minimis) business dealings in NY is understandable; but its continuing attempt to conflate jurisdictional agency principles with its "holding out" theory is both unprecedented and unwarranted.

In any event, there is another reason that Global cannot be considered an agent of KCorp for jurisdictional purposes.  Notwithstanding DuPont's argument to the contrary, which it did not raise at any previous time, the evidence of record establishes that KCorp *is* a holding company and is *not* actively involved in the operations of Global.  In *Ginsberg v. Government Properties Trust, Inc.*, No. 07 Civ. 365, 2007 U.S. Dist. LEXIS 75771 (S.D.N.Y. Oct. 11, 2007), the court was faced with an assertion by plaintiff that defendant, Government Properties Trust ("GPT"), a Real Estate Investment Trust, was doing business in New York on an agency theory by reason of the activities of GPT's subsidiaries, which owned rental properties in New York.  The court held that the determination of this issue rested on the issue of control.  According to the Court, "if GPT merely acquires properties for investment purposes that the subsidiaries actually manage themselves, the parent would merely be a holding company, in which case it could not be said that the New York subsidiaries, as its agents, conduct GPT's real estate investment business for

---

[13] Even when Kolon I'Networks – Global's predecessor – had an office in New York (which was closed in 2007), Mr. Choi testified that the fact that it was in New York "was not that important." (Tr. 192:6-7; *see also* Tr. 210:6-10.)  According to Mr. Choi, "having a foothold in the United States was important, and not New York in particular."  (Tr. 192:7-8.)

it." *Id.* at *24 (citation omitted).  The court continued to reason that, "if GPT actively manages the properties through its control of the New York subsidiaries, these subsidiaries could be said to carry out GPT's own property management business."  *Id.*; *see also Gallelli v. Crown Imps., LLC*, 701 F. Supp. 2d 263, 274 (E.D.N.Y. 2010) (holding that the court lacked personal jurisdiction over a foreign parent holding corporation because its subsidiaries carried out their own businesses and not the business of the foreign parent holding company); *Gurvey*, 2009 WL 691056, at *4 (same).

Here, there is no evidence in the record that KCorp actively manages the operations of Global (or any other particular subsidiary).  In fact, the uncontroverted evidence is exactly the opposite, that KCorp is a holding company, which does not direct the operations of Global.  As Mr. Choi testified:

> Q.  To your knowledge, does Kolon Corporation engage in manufacturing, sales or other operational activities?
>
> A. To my knowledge, Kolon Corporation does not do these operations.  It is a holding company.
>
> Q.  Now, you explained that Kolon Corporation owns more than 50 percent of the stock of Kolon Global.  Based upon your position and responsibilities with Kolon Global, to what extent does Kolon Corporation direct the business functioning activities of Global?
>
> A. It's an independent company so it does not have influence over it.

(Tr. 199:8-19.)  Notably, DuPont failed to dispute or even question this testimony during the hearing.  Nor did DuPont dispute the uncontroverted evidence of record that Global's directors and officers, with but a single exception, are completely independent of those serving KCorp.  (*See* Exs. K60, K61.)

The best DuPont can do in this regard is to point to general and ambiguous statements in a public filing of KCorp, none of which rebuts the specific testimony of Mr. Choi.  (*See* Brief at

p. 15; Ex. 142.)  DuPont also understandably fails to reference Exhibit K13, which is a publicly

filed report to the Korean Financial Service Commission disclosing the reorganization in which

KCorp was formed.  According to such report, KCorp was created:  "To ultimately establish a

pure holding company that is dedicated to the investment business sector through the split of the

manufacturing business sector and the investment business sector, so that each sector can

independently focus on its own innate business."  (Ex. K13 at p. 4.)

DuPont further argues that a general assertion in Exhibit 61 by Industries that to take

advantage of tax incentives "many publicly-traded Korean conglomerates . . . began to adopt

holding company structures" is significant given the statement in *Bellomo v. Pennsylvania Life

Co.*, that when "*subsidiaries* are created by the parent, for tax or corporate finance purposes, to

carry on business on its behalf, there is no basis for distinguishing between the business of the

parent and the business of the subsidiaries."  488 F. Supp. 744, 746 (S.D.N.Y. 1980) (emphasis

added).[14]  Exhibit 61, however, does not specifically set forth the reasons why KCorp was

created.  That is disclosed in Exhibit K13.  Moreover,  Exhibit 61 does not address why KCorp's

*subsidiaries* were formed.  There certainly is no evidence in the record to establish that Global

was formed by KCorp for "tax or corporate finance purposes" or that any of Global's

predecessors, including Kolon I'Networks or Kolon International, all of which existed before the

formation of KCorp, were formed for such purposes.

Instead, as established at the hearing, Global is a substantial, publicly traded trading

company with 2,700 employees and revenues of $3.6 billion.  (Tr. 198:7-17.)   There is minimal

overlap between its officers and directors and those of KCorp.  (Exs. K60, K61.)  Global

---

[14] Notably, the *Bellomo* court expressly relied on a presumption "that the parent is sufficiently
involved in the operation of the subsidiaries to become subject to jurisdiction."  *Id.*  Here, of
course, the uncontroverted evidence of the record belies any basis for a comparable presumption.

operates largely independently from other affiliated companies owned in whole or in part by KCorp, and the uncontroverted testimony establishes that KCorp does NOT influence the independent business operations of Global.  (Tr. 199:8-19.)

Finally, DuPont essentially argues without any basis and evidence that this Court should somehow disregard the corporate reorganization in which KCorp was formed as some sort of sham transaction.  (Brief at pp. 13-14.)  That is ridiculous.  This reorganization was effective at year end 2009, and according to Exhibit 61, Industries "began analyzing the feasibility of undergoing a holding company restructuring" in 2008.  (Ex. 61 at p. 2.)  The underlying lawsuit in the Eastern District of Virginia was filed in February of 2009 and judgment was not rendered until September of 2011.  The purpose of the reorganization was disclosed in Exhibit K13.  It was not undertaken to avoid a possible future judgment that might occur years down the road.

DuPont has failed to satisfy its burden to prove that jurisdiction exists over KCorp.

## IV.   ASSERTING JURISDICTION OVER INDUSTRIES OR KCORP WOULD VIOLATE DUE PROCESS

Jurisdiction over Industries or KCorp would also not comport with the Fourteenth Amendment's due process clause.  Under federal due process, the court must determine whether the "nonresident corporate defendant [] has certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Helicopteros*, 466 U.S. at 414 (citations and internal quotations omitted).

As the Second Circuit has articulated, "[b]ecause general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test [than it would under specific jurisdiction], requiring the plaintiff to demonstrate the defendant's 'continuous and systematic general business contacts'" with the forum state.  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (citing *Helicopteros*, 466 U.S. at 416).

- 24 -

Accordingly, the due process requirement protects a foreign defendant "without *meaningful ties* to the forum state from being subjected to binding judgments within its jurisdiction." *Royal & Sunalliance Ins. Co. v. Resolve Towing & Salvage, Inc.*, No. 00 Civ. 2473, 2000 WL 1801838, at *1 (S.D.N.Y. Dec. 7, 2000) (emphasis in original).  In other words, "[t]he required minimum contacts exist where the defendant 'purposefully availed' itself of the privilege of doing business in the forum and could foresee being 'haled into court' there." *Time, Inc. v. Simpson*, No. 02 Civ. 4917, 2003 WL 23018890, at *7 (S.D.N.Y. Dec. 22, 2003) (citation omitted) (plaintiff conceded defendant had "no direct personal contacts with the state of New York" and thus, foreign defendant never "purposefully availed himself of the privilege of conducting business in New York").

Here, exercising general jurisdiction over Industries, a foreign corporation where DuPont has submitted no evidence of  substantive contacts with New York would violate the "minimum contacts" requirement.  The evidence upon which DuPont relies simply does not establish the "continuous and systematic general business contacts" needed to satisfy due process.

Likewise, the same analysis applies to KCorp.  In its thousands of pages of briefs, exhibits and motions, and throughout the evidentiary hearing, DuPont has failed to allege a single direct contact that KCorp has with New York, let alone "meaningful ties."

## V.      CONCLUSION

For the foregoing reasons, Industries and KCorp respectfully request that the Court dismiss DuPont's Motion for Turnover in its entirety for failure to prove that general personal jurisdiction exists over either Industries or KCorp in New York.

Dated:  New York, New York
        May 31, 2013

                        Respectfully submitted,

                        PAUL HASTINGS LLP

        By:             _____
                        Mark D. Pollack (appearing pro hac vice)
                        Daniel B. Goldman

                        Paul Hastings LLP
                        75 East 55th Street
                        New York, NY  10022
                        Telephone: (212) 318-6000
                        Facsimile: (212) 319-4090
                        markpollack@paulhastings.com
                        dangoldman@paulhastings.com

                        *Attorneys for Kolon Industries, Inc. a/k/a*
                        *Kolon Corporation*