UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

E.I. du Pont de Nemours and Company,

                         Plaintiff,

      -v-

Kolon Industries, Inc.,

                   Defendant.

------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: AUG 2 9 2013

12 Civ. 8435 (AJN)

Memorandum
and Order

**ALISON J. NATHAN, District Judge:**

Plaintiff, E.I. du Pont de Nemours & Company ("Du Pont"), seeks to enforce an approximately $920 million judgment it obtained against Defendant Kolon[1] following a trial in the Eastern District of Virginia. At issue is Du Pont's November 7, 2012 motion for a turnover order against Kolon, which Kolon opposes solely on the grounds that this Court lacks personal jurisdiction. An evidentiary hearing was conducted over the course of three days from April 30-May 2, 2013, to assess whether Kolon has engaged in continuous and systematic contacts with New York sufficient for general personal jurisdiction to be exercised over it here. The Court is bound to conclude that Du Pont has failed to establish by a preponderance of the evidence that general jurisdiction may be exercised over Kolon in New York and, as a result, the Court DENIES Du Pont's motion for a turnover order.

---

[1] As discussed in Section "III" below, there is ambiguity in the record as to the relationship between Kolon Corporation ("Kolon Corp."), which was, prior to 2009, known as Kolon Industries, Inc., and the entity presently named "Kolon Industries, Inc." ("Kolon Industries"), which is a subsidiary of Kolon Corp. For purposes of this opinion, the entities presently named Kolon Corporation and Kolon Industries, Inc. are collectively referred to as "Kolon." For the reasons discussed in detail in Sections "III" and "IV" below, the Court does not at this time make any determination regarding whether either (or both) of these entities are liable to Du Pont as a judgment debtor, because the Court concludes that it lacks personal jurisdiction to enforce Du Pont's requested turnover order against either of them.

## I.     PROCEDURAL HISTORY

Du Pont obtained a judgment against Kolon for approximately $920 million in the United

States District Court for the Eastern District of Virginia in November of 2011.  On April 13,

2012, Du Pont registered that judgment in this district pursuant to 28 U.S.C. § 1963, thereby

commencing a miscellaneous action here.  *See E.I. Du Pont De Nemours and Co. v. Kolon*

*Indus., Inc.*, No. 12-MC-120 (S.D.N.Y.).  On May 14, 2012, Du Pont sought a turnover order

pursuant to N.Y. C.P.L.R. § 5225(b) against Shinhan bank, which was alleged to possess

Kolon's assets.  Dkt. No. 5.   On May 9, 2012, Judge Stein, presiding in Part 1, issued a

temporary restraining order ("TRO") barring Shinhan Bank from dispersing any of Kolon's

assets.  *See* Dkt. Nos. 16, 22.  On May 18, 2012, Judge Stein extended that order through June 1,

2012, and put the parties on a briefing schedule for Du Pont's motion for a turnover order.  *Id.*

On May 24, 2012, Du Pont filed a motion for a turnover order against Kolon itself.  Dkt. No. 17.

And on May 30, 2012, Du Pont filed motions for turnover orders against additional banks who it

alleged was in possession of Kolon's assets.  Dkt. Nos. 31, 34, 38, 41.

On June 1, 2012, Judge Koeltl, presiding in Part 1, denied Du Pont's motion for a

preliminary injunction and stayed a ruling on the turnover order sought against Shinyan Bank

pending resolution of Du Pont's motion for a turnover order against Kolon Industries itself.  *See*

6/1/12 Tr. at 64-77; Dkt. No. 71.  Then, on June 12, 2012, Judge Koeltl denied the motion for a

turnover order against Kolon, concluding that the evidence presented was insufficient to support

a determination that this Court may exercise personal jurisdiction over Kolon to enforce the

Virginia judgment.  6/12/12 Tr. at 40-44; Dkt. Nos. 74, 77.  Judge Koeltl granted Du Pont leave

to conduct jurisdictional discovery regarding Kolon's contacts with and ties to New York.  *Id.*

Following jurisdictional discovery, Du Pont renewed it motion for a turnover order against Kolon on November 7, 2012. Dkt. No. 83. The November 7, 2012 motion was brought before Judge Kaplan, then presiding in Part 1, and, following an application for a single judge to preside over this matter in the interests of continuity and judicial economy, Chief Judge Preska ordered that this matter be assigned a civil docket number. *See* Dkt. No. 88. The case was thereafter assigned to Judge Sweet on November 19, 2012.

After the case was assigned as a civil matter to Judge Sweet, Kolon opposed Du Pont's renewed motion for a turnover order, again asserting the absence of personal jurisdiction, and moved to strike references in the motion to the October 18, 2012 indictment in the Eastern District of Virginia of Defendant and five of its current and former employees. Dkt. Nos. 93, 95. During oral argument held on January 30, 2013, Judge Sweet determined that an evidentiary hearing would be necessary to decide whether this Court may exercise personal jurisdiction over Kolon Industries in this matter.

The evidentiary hearing was commenced on April 29, 2013. Shortly after opening arguments were completed, Judge Sweet raised a potential judicial conflict, and Kolon sought his recusal. *See* Dkt. No. 139. As a result, on April 30, 2013, this case was reassigned to the undersigned Judge. The evidentiary hearing commenced anew on the afternoon of April 30, 2013, and was completed on May 2, 2013.

At the hearing, Du Pont called three witnesses who were available to testify: (1) Michael Ahn, a New Jersey-based independent contractor who has a relationship with a Kolon subsidiary, (2) Hung Kyu Kim, a Kolon employee called to testify about Kolon's internal corporate structure, and (3) Jae Won Choi, the manager of Kolon Global, which is a subsidiary of Kolon Corporation. Because the arguments proffered by Du Pont at the hearing differed from those that

3

were presented clearly in the pre-hearing briefs, the Court requested post-hearing briefing to allow both parties to fully address in writing the bases upon which Du Pont asserts that general personal jurisdiction may be obtained over Kolon in New York.

## II. STANDARD OF REVIEW

In a case involving federal question jurisdiction and a foreign defendant, the Court applies the forum state's personal jurisdiction rules if the federal statute does not specifically provide for national service of process. *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004). Thus, if, as in this case, a party seeks enforcement of a judgment in this district pursuant to 28 U.S.C. § 1963, which does not provide for national service of process, the Court must first assess whether New York law allows for the exercise of personal jurisdiction. *Estate of Ungar v. Palestinian Auth.*, 400 F. Supp. 2d 541, 547 (S.D.N.Y. 2005) (McMahon, J.); *accord* 6/12/12 Tr. at 40 (Dkt. No. 77) (Koeltl, J.). The Court must also determine whether the exercise of personal jurisdiction comports with constitutional due process guarantees. *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 94 (2d Cir. 2000).

A district court has "considerable procedural leeway" in determining how to resolve a question as to personal jurisdiction. *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, --- F.3d ---, 2013 WL 3335784, at *5 (2d Cir. July 3, 2013). Here, in light of the parties' having been granted jurisdictional discovery and an evidentiary hearing having been conducted, Plaintiff must establish the existence of personal jurisdiction by a preponderance of the evidence. *See Commercial Union Ins. Co. v. Alitalia Airlines, S.p.A.*, 347 F.3d 448, 469-70 (2d Cir. 2003); *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566-67 (2d Cir. 1996). Du Pont does not contest that it bears this burden. *See Du Pont Post-Hearing Br. at 1-2.

## III. BACKGROUND ON THE KOLON ENTITIES

4

Resolution of the present motion requires some understanding of the web of related entities within the broader corporate structure existing under the parent, Kolon Corp., a Korean company. In 2009, the Kolon conglomerate underwent an internal restructuring resulting in Kolon Industries, Inc., the parent company within the structure, changing its name to "Kolon Corporation" while maintaining the same ticker signal on the Korea Stock Exchange. Ex. 61. Du Pont has insinuated that this restructuring was an elaborate attempt to avoid paying the Virginia judgment, but there is no evidence in the record presently before the Court requiring such a conclusion.

At the time that Kolon Industries, Inc. changed its name to Kolon Corp., it created a subsidiary named Kolon Industries, Inc. ("Kolon Industries"). Kolon Corp. is also the parent of a third entity relevant to this litigation, Kolon Global. Kolon Global was formed in 2011 through the merger of three other Kolon entities. Ex. 140 at 5. Kolon Global maintains some contacts with a New Jersey-based independent contractor named Michael Ahn.

The Virginia judgment that underlies this enforcement action was obtained against Kolon Industries, Inc. Du Pont has briefed reasons why it believes that both Kolon Corp. and Kolon Industries should be deemed the judgment debtor. The Court need not resolve this issue, however, because, as discussed below, the Court finds that it lacks personal jurisdiction to enforce the requested turnover order against either Kolon Corp. or Kolon Industries.

## IV.    DISCUSSION

Du Pont proffers two theories that it submits allow this Court to conclude that there is general personal jurisdiction over the Korean entities it asserts are the judgment debtor—Kolon Industries and Kolon Corp.—in New York. First, Du Pont asserts that the Court has personal jurisdiction over Kolon Industries because Kolon Industries has conducted small amounts of

5

business in New York and allegedly falsely held itself out as having a New York office. Second, Du Pont argues that the Court has personal jurisdiction over Kolon Corp. because, at the time that it first moved for a turnover order in May of 2012, Kolon Corp. had a subsidiary that was doing business in New York, and that subsidiary was so integral to Kolon Corp.'s business that, but for the presence of the subsidiary in New York, Kolon Corp. itself would be doing the subsidiary's work here. The Court is not persuaded by either of these arguments and concludes that, in light of the record established at the evidentiary hearing, Du Pont has not proven by a preponderance of the competent evidence that general jurisdiction may be exercised over Kolon Corp. or Kolon Industries in New York. Du Pont is entitled to seek enforcement of its substantial judgment against Kolon. On the record before the Court, however, it may not do so in New York based on a theory of general jurisdiction over Kolon asserted here pursuant to N.Y. C.P.L.R. § 301.

### A. General Jurisdiction May Not Be Exercised over Kolon Industries in New York

Du Pont argues that general jurisdiction may be exercised over the entity presently known as Kolon Industries in New York based on Kolon Industries' solicitations of business in New York and its supposed efforts to pretend that it has an office in New York. As discussed below, the Court finds that Du Pont has not demonstrated by a preponderance of the evidence that general personal jurisdiction may be exercised over Kolon Industries in New York.

#### 1. Kolon Did Not Engage in Solicitations of Business in New York Sufficient to Subject Itself to the Exercise of General Jurisdiction Here

Pursuant to N.Y. C.P.L.R. § 301, *et seq.*, a foreign corporation is subject to the general personal jurisdiction of the courts of New York if the corporation is "doing business" here. *See Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 77 N.Y.2d 28, 33 (N.Y. 1990); *accord*

6

*Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000).  A defendant corporation is deemed to be "doing business" in New York if it has engaged in "such a continuous and systematic course of 'doing business' here that a finding of its 'presence' in this jurisdiction is warranted." *Landoil*, 77 N.Y.2d at 33.  The Second Circuit has explained the contours of the Section 301 test as follows:

> The test is a "simple pragmatic one," which is necessarily fact sensitive because each case is dependent upon its own particular circumstances.  The Court must therefore analyze a defendant's connections to the forum state "not for the sake of contact-counting, but rather for whether such contacts show a continuous, permanent and substantial activity in New York."
>
> In assessing jurisdiction under this pragmatic standard, New York courts have generally focused on the following indicia of jurisdiction: the existence of an office in New York; the solicitation of business in New York; the presence of bank accounts or other property in New York; and the presence of employees or agents in New York.

*Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043-44 (2d Cir. 1990).  Importantly, solicitation of business in New York will not suffice to justify a finding of general jurisdiction in New York unless it is "substantial and continuous" *and* the "defendant engages in other activities of substance in the state."  *Landoil Res. Corp.*, 918 F.2d at 1043-44.

Applying this analysis, based on the record developed at the evidentiary hearing, the Court finds that Kolon Industries was not "doing business in New York" for purposes of Section 301.  Indeed, all the record demonstrates is that Kolon Industries was, in the aggregate, conducting a *de minimus* amount of business in New York and was not here on a continuous or systematic basis.

First, Kolon Industries ships products to Kenya and Tanzania for a company called Magic Chemicals, which lists a New York address and remits payments to Kolon Industries in New York.  Exs. 55, 58.  The record reflects that Kolon Industries, which enjoys annual revenues of

7

approximately $4 billion, engaged in approximately $134,000 in sales with Magic Chemicals in 2010 and 2011. Exs. 55, 58. This sum is insufficient to warrant a finding of general jurisdiction. *Stemcor USA, Inc. v. Sharon Tube Co.*, 2001 WL 492427, at *1-2 (S.D.N.Y. May 8, 2001) (company that "invoiced to and shipped to customers in New York" was not subject general jurisdiction because the sales were "too insubstantial to reflect the degree of permanent and substantial activity required for jurisdiction under Section 301") (Cote, J.); *see also Unique Indus., Inc. v. Sui & Sons Int'l Trading Corp.*, 2007 WL 3378256, at *3 n.4 (S.D.N.Y. Nov. 9, 2007) ("When less than 5% of a company's revenue attributes to its business in the forum state, general jurisdiction is normally denied.") (Karas, J.). Moreover, Kolon Industries' relationship with Magic Chemicals does not indicate permanent or substantial business activities in New York on the part of Kolon Industries.

In addition to these minor sales with Magic Chemicals, Kolon Industries employees travelled to New York approximately twice a year to visit Marc Jacobs showrooms and make some purchases. Exs. 108-118, 120. FnC Kolon Corp., ("FnC"), a division of Kolon Industries, is the licensee in a retail store license agreement with John Varvators Apparel Corporation, a Delaware entity, and John Varvators Enterprises, a New York entity. Joint Stip. ¶ 2. FnC has purchased some goods from John Varvators and Marc Jacobs. Purchasing goods in New York is insufficient to support a finding of general jurisdiction. *Rolls-Royce Motors, Inc. v. Charles Schmidt & Co.*, 657 F. Supp. 1040, 1044-45 (S.D.N.Y. 1987) (no general jurisdiction over foreign defendant who travelled to New York "at least once a month for several years primarily to buy used cars.") (Leisure, J.). Indeed, a finding of general jurisdiction on such grounds would not comport with the Due Process Clause of the Fourteenth Amendment. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 418 (1984) ("[M]ere purchases, even if

occurring at regular intervals, are not enough to warrant" the exercise of general jurisdiction).

Nor do these purchases, coupled with the limited sales describe above, amount to permanent

substantial business activity for purposes of Section 301.

Finally, Kolon Industries conducts business with Palmer Holland Company ("Palmer

Holland"), an Ohio business that takes title to products in Korea from Kolon Industries before

shipping them to a Palmer Holland customer in New York named Atlantic Paste and Glue Co.

("Atlantic Co."). Joint Stip. ¶¶ 1a-c. Sometimes, at the request of Palmer Holland, Kolon

Industries ships products directly to Atlantic Co. *Id.* Selling products to Palmer Holland, who in

turn resells them to a New York entity, and occasionally sending the products directly to Palmer

Holland's New York customer at Palmer Holland's request, does not constitute "doing business"

in New York for purposes of Section 301. *See McShan v. Omega Louis Brandt et Frere, S.A.*,

536 F.2d 516, 517-18 (2d Cir. 1976) ("[S]ales, no matter how substantial, of a foreign

manufacturer's product in New York through an independent agency do not make the foreigner

amenable to suit in New York, even though the products are advertised in local media."). Nor do

these sales tip the balance in favor of general jurisdiction when considered together with the

other activities previously discussed.

In its totality, the record indicates that Kolon Industries and its employees are not coming

to New York on a regular or systematic basis. Kolon Industries does not solicit more than a *de

minimus* amount of business in New York, does not have an office or permanent employees here,

does not own property here, and is, at base, simply not doing business in New York at anywhere

near the level sufficient to allow for the exercise of general jurisdiction over it here. Indeed, at

the hearing before this Court on May 2, 2013, Du Pont's counsel conceded on the record that

Kolon Industries' contacts with New York are "pretty thin" and that it is "not a compelling or

9

overwhelming amount of contacts, especially when we're asking you to exercise general jurisdiction . . . ." Tr. at 338:1-5, 343:9-11. The Court agrees with this assessment, and concludes that Kolon Industries' contacts in New York are insufficient to render the exercise of general jurisdiction over Kolon in New York appropriate.

2. Du Pont's "Pretend Office" Theory Does Not Establish That General Jurisdiction May Be Exercised Over Kolon Industries in New York

In light of the absence of continuous and systematic contacts with New York on the part of Kolon Industries, Du Pont argues that general jurisdiction may nonetheless be obtained over Kolon Industries here because, Du Pont alleges, Kolon Industries has pretended to have an office in New York. This argument fails because there is insufficient evidence in the record to support a finding that Kolon Industries held itself out as having a New York office. Moreover, even if the record did support such a conclusion, a pretend office, in conjunction with *de minimus* business contacts, is insufficient to support a finding of general jurisdiction.

The competent evidence in the record does not support the conclusion urged by Du Pont that Kolon Industries was pretending to have an office in New York. The sole evidence that Du Pont has to suggest that Kolon Industries held itself out as having a New York office is a map of the world found in Exhibits 74 and 75 that contains a legend over North America stating "Kolon USA New York Office." Exs. 74-75. However, Du Pont did not bring any witness to the hearing to authenticate these documents. Instead, Du Pont, following extensive argument, agreed that these documents, which were delivered to Du Pont in response to a subpoena on a third party, were authenticated only for the purpose of establishing that they are documents that Du Pont received. Tr. at 140:24-141:4. Du Pont's counsel was clear that she could not authenticate that either document "is what it purports to be on its face." *Id.* Given that Du Pont

10

conceded that it was not able to establish that Exhibits 74 and 75 are what they "purport to be" on their face, there is no competent evidence suggesting that Kolon Industries held itself out as having a New York office. Moreover, even considering these exhibits, they can hardly be given much weight. First, they purport on their face to date from 2009 and 2010. But the relevant date for the jurisdictional analysis is on or about May 17, 2012. *Mones v. Commercial Bank of Kuwait, S.A.K.*, 502 F. Supp. 2d 363, 371-72 (S.D.N.Y. 2007) (Scheindlin, J.); *Arrow Trading Co., Inc. v. Sanyei Corp. (Hong Kong), Ltd.*, 576 F. Supp. 67, 69 (S.D.N.Y. 1983) (Motley, J.); *see also Gaboury v. Cent. Vt. Ry. Co.*, 250 N.Y. 233, 236-37 (1929) (Cardozo, C.J.) (noting that a foreign corporation is subject to service of process in New York "when at the time of service it is doing business within our borders" and holding that service was improper because the defendant was not acting as a corporation in New York at the time of service). Du Pont asserts that these maps create an inference that Kolon Industries was pretending to have a New York office two years later, but the Court can draw no such inference given how little can be ascertained from the documents. The exhibits show a map with the following written over North America:

> Kolon USA
> New York Office

(Ex. 74). The Court was presented with no evidence explaining what this means. Nor does the Court know who created this document, for what purpose it was created, or whether it was widely distributed. A map with those words on it does not speak for itself.

In addition to Exhibits 74 and 75, Du Pont draws the Court's attention to Exhibits 183 and 191, which are print outs from Kolon's website indicating that Kolon I'Networks Corp. ("I'Networks") has a "New York Branch" located on West 38th Street in Manhattan. Exs. 183,

191.  With regards to I'Networks, Du Pont concedes in its brief that I'Networks was merged into

Kolon Global in 2011, and therefore is not a subsidiary or division of Kolon Industries.  Pl. Br. at

8; *see also* Ex. 140 at 5.  Instead, I'Networks is a partial predecessor to an entity that is a

subsidiary of Kolon Corp. and a sibling entity of Kolon Industries.  That I'Networks may have at

one time maintained a real or pretend New York office is not, on its own, sufficient to support a

finding that Kolon Industries did the same thing.  Nor does it aid Du Pont in establishing that

general jurisdiction exists over Kolon Industries in New York.  Moreover, one of these website

print outs makes clear that Kolon Industries' United States offices were said to be located in

Fairfield, New Jersey and Gaithersburg, Maryland, and not in New York.  Ex. 183.

Even if there existed competent evidence in the record to support a finding that Kolon

Industries pretended or held itself out as having a New York office, the Court would still

conclude that general jurisdiction should not be exercised over Kolon Industries in New York

pursuant to Section 301.  That is because the Court is not persuaded by Du Pont's argument that

a defendant may submit itself to general jurisdiction in a forum by pretending publicly to have

operations there.  To the contrary, even the presence of an *actual* office in New York is not

dispositive of the question of whether general jurisdiction may be exercised.  *In re Rationis*

*Enters., Inc. of Panama*, 261 F.3d 264, 270 (2d Cir. 2001); *accord Three Five Compounds, Inc.*

*v. Scram Techs., Inc.*, 2011 WL 5838697, at *14 (S.D.N.Y. Nov. 21, 2011) ("[T]he Court

certainly cannot hold that [an employee's] representation alone suffices to establish general

jurisdiction because even the presence of . . . an office is not dispositive.") (internal quotation

marks omitted) (Holwell, J.).

In support of its pretend office theory of general jurisdiction, Du Pont relies heavily on

*New York Marine Managers, Inc. v. M.V. Topor-1*, 716 F. Supp. 783, 785 (S.D.N.Y. 1989)

(Mukasey, J.).  But *Marine Managers* is an *agency* case that does not support Du Pont's pretend office theory.  In *Marine Managers*, the defendant Ektrans claimed in a brochure that it had a New York office, providing the exact address, telex number and telephone number.  At an evidentiary hearing, the defendant's general counsel testified that it had no New York office, but then later indicated that its New York address was that of an affiliate, Ekco.  The *Marine Managers* court determined that "the fact that Ektrans, a related company under common control, listed Ekco's office as its own is strong evidence—for purposes of determining jurisdiction—that Ektrans used Ekco as its New York agent." *Id.* at 786.  *Marine Managers* does not stand for the principle that when a foreign company vaguely represents itself as doing business in New York, it is subject to general jurisdiction here even if it has no New York office and has not engaged in business here on a continuous or systematic basis.[2]

Even if Exhibits 74 and 75 were admissible for the purpose that Du Pont seeks to use them, the most that Du Pont would be able to show is that Kolon Industries engaged in puffery, pretending in a brochure to have an office in a major center for global commerce when in fact it did not.  But puffery without more does not lead to foreseeability that one may be haled in to New York court to litigate *any* matter.  It is possible that in some cases holding one's self out as having a New York office may be one piece that contributes to a finding of general jurisdiction, *see Safety Software Ltd. v. Rivo Software, Inc.*, 2012 WL 1267889, at *3 (S.D.N.Y. Apr. 11, 2012) (Forrest, J.), but it would not tip the scale here given that the evidence reflects only very minor actual contacts between Kolon Industries and New York.

---

[2] In light of the Court's reading of *Marine Managers*, the Court is not persuaded to come to a contrary conclusion by Plaintiff's citation to a passage in *dicta* contained in *Revlon, Inc. v. United Overseas Ltd.*, 1994 WL 9657, at *2 (S.D.N.Y. Jan. 12, 1994) (Sotomayor, J.); *see also Mayatextil v. Liztex USA, Inc.*, 1995 WL 131774 (S.D.N.Y. Mar. 23, 1995) (Sotomayor, J.).

\*\*\*\*\*

In short, Du Pont has presented evidence establishing that, at most, Kolon Industries has engaged in what Du Pont's counsel concedes is "not a compelling or overwhelming amount of contacts" with New York. These contacts, which may be sufficient to support specific jurisdiction, do not demonstrate that Kolon Industries conducted business in New York on a continuous and systematic basis and should be subject to general jurisdiction here. And while there is no competent evidence demonstrating that Kolon Industries ever pretended to conduct business in New York, even if there were, such puffery, coupled with Kolon Industries' *de minimus* contacts, would not establish that Kolon Industries was doing business in New York for purposes of Section 301.

      B.  <u>General Personal Jurisdiction May Not Be Exercised Over Kolon Industries or Kolon Corp. in New York Based on an Agency Theory</u>

In the alternative, Du Pont argues that Kolon Corp.'s subsidiary, Kolon Global, is doing business in New York and serves as Kolon Corp.'s agent for purposes of jurisdiction. While there is evidence supporting the conclusion that Kolon Global, the subsidiary, which maintains a New York business registration, may in fact be subject to general jurisdiction here, the Court concludes that the evidence does not support a finding that Kolon Global may serve as either Kolon Industries or Kolon Corp.'s agent in New York for jurisdictional purposes.

The Second Circuit has instructed that "the presence of [a] subsidiary alone does not establish the parent's presence" in New York. *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998) (citation omitted). Instead, to "establish that a subsidiary is an agent of the parent, the plaintiff must show that the subsidiary does all the business which [the parent] could do were it here by its own officials." *Id.* (internal quotation marks omitted). Thus, a foreign

company is doing business in New York when "its New York representative provides services beyond mere solicitation and these services are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." *Gelfand v. Tanner Motor Tours, Ltd.*, 385 F.2d 116, 121 (2d Cir. 1967) (internal quotation marks omitted); *see also Tese-Milner v De Beers Centenary A.G.*, 613 F. Supp. 2d 404, 415 (S.D.N.Y. 2009) ("Courts have interpreted this to mean that the agent's activities in New York must be sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.") (Wood, J). Courts also look to "whether the subsidiaries are carrying out their own business or that of the parent." *Gurvey v. Cowan, Liebowitz & Latman, PC*, 2009 WL 691056, at *4 (S.D.N.Y. Mar. 17, 2009) (Jones, J.).

The Court finds that Kolon Global's activities in New York have been carried out for itself and not for its parent, and are not so important to Kolon Corp. that it would be here doing that business if not for Kolon Global. The evidence demonstrates that Kolon Global has had a single New York contact, a company named Spiewak & Sons, Inc. ("Spiewak") to whom it sells between $280,000 and $300,000 of goods per year. Exs. 240-41. These sales amount for less than one tenth of one percent of Kolon Global's annual sales, which are in the range of $3.6 billion, Tr. at 198:7-12, and a much smaller fraction of annual revenue for Kolon Corp. There is no evidence indicating that, in the absence of Kolon Global, Kolon Corp. itself, with annual revenues in the billions of dollars, would come to New York to benefit from these few hundred thousand dollars of annual sales. Du Pont makes much of the fact that at least three Kolon-related entities—Kolon International, I'Networks, and Kolon Global—have continuously sold

15

products to Spiewak for decades.  But all three of these entities were gradually merged into each other.  These sales therefore constitute a modest revenue stream from one account that represents an infinitesimal amount of Kolon's overall annual revenue.

In addition to the Spiewak account, Kolon Global has maintained a relationship with a New Jersey-based individual named Michael Ahn ("Ahn").  Though Kolon Global's internal documents variously refer to Ahn as "President" and "Branch Manager," (*see* Exs. 130, 229 at SDNY_KGB568), these titles are honorific and Du Pont's brief concedes that Ahn is presently an "independent contractor."  Du Pont Post-Hearing Br. at 16; *see also* Tr. at 176:7-16.  Ahn has operated out of New Jersey since at least 2008.  Tr. at 276:20-77:6.

Du Pont makes much of the fact that in 2012, Ahn discussed selling Miocell, a mattress fabric product produced by Kolon Industries, in the United States, and may have contacted a potential costumer on 57th Street in Manhattan.  Ahn never spoke directly with anyone at Kolon Industries about this proposed project.  Tr. at 279:3-7.  Ahn's brief discussions about selling Kolon Industries' Miocell product went nowhere: Ahn never sold Miocell, and he testified that he never contacted any buyers in New York about Miocell.  Tr. at 279:8-23.  Du Pont urges the Court to discredit Ahn's testimony and conclude that he did in fact sell Miocell in New York.  But the Court observed Ahn to be a credible witness and the Court credits his testimony.  Moreover, Du Pont's supposedly conflicting evidence is not persuasive.  It consists of an email sent by Ahn to a Kolon employee on June 17, 2012, stating that he was contacting mattress companies listed in an attachment to the email.  Ex. 127.  The attachment to the email lists mattress companies all over the United States, including one company on 57th Street in Manhattan.  Ahn testified that he never actually made these contacts.  Tr. at 271:17-18.  Even if Ahn had contacted some of these mattress companies and forgot, only one of the many

16

companies listed is in New York. Evidence of a New Jersey-based independent contractor

calling mattress companies all over the United States to solicit business, including possibly one

in New York, does not establish that general jurisdiction may be exercised over the contractor's

employer in New York.[3]

Finally, Du Pont, seizing on documents indicating that Kolon Global had also pretended

at times to have a New York City office,[4] attempts to bootstrap its pretend office theory onto

New York's agency doctrine, arguing that if Kolon Global did not pretend to have a New York

office, another Kolon entity would have. Du Pont Post-Hearing Br. at 2. But nothing in the

record suggests that Kolon Industries or Kolon Corp. ever ascribed any substantial value to an

imagined New York office. And even if Kolon Global engaged in puffery, pretending to have an

office on West 38th Street in Manhattan when, in fact, it really just had an independent

contractor operating out of New Jersey, that puffery cannot be used to hale Kolon Global's

parent or sibling entities into New York court to litigate all matters.

In its effort to demonstrate the supposed significance of Kolon Global's pretend New

York office to Kolon Corp., Du Pont points to one Kolon Global email that, using flowery

language, raises the possibility of trying to "revive the past glory of the New York branch." Ex.

130. But this statement was in the context of discussing steel sales that ultimately never

materialized. *Id.* Moreover, the reference in the email to a "New York branch" was made by a

---

[3] In addition to discussing sales of Miocell, Ahn also discussed sales of steel in New York with Kolon Global employees. Ex. 215. Again, Ahn never contacted any potential buyers in the United States regarding the possible sale of steel, and never sent marketing materials or pricing information about steel to anyone in New York. Tr. at 280:13-25.

[4] Though Kolon Global at one point held itself out as having an office on 38th Street in Manhattan, Du Pont's counsel conceded at the hearing that Kolon Global never actually had a New York office. Tr. at 328:10-29:13.

Kolon steel seller who worked in China and whose knowledge of matters relating to Kolon's North American operation is uncertain. *Id.* Indeed, it is clear from the evidentiary hearing that Korea-based Kolon and Kolon Global employees referred colloquially to Ahn as a "New York office" without fully appreciating that Ahn was actually located in a New Jersey suburb. Tr. at 177:11-178:19. Similarly, references in Kolon documents to a "New York office" that might help expand into Latin America are references to Ahn's New Jersey-based operations. Ex. 229. These same documents indicate that, to the extent that a value was placed on an office in this region, the value came from "[p]ossessing an office in the Americas," and not an office actually in New York.

In sum, the Court finds that, based on the evidence in the record, the activities conducted by Kolon Global and Michael Ahn in New York were not of "meaningful importance" to Kolon Corp. or Kolon Industries. *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 96 (2d Cir. 2000). The evidence does not support the conclusion that, absent Kolon Global's operations in New York or Ahn's independent contracting operation in *New Jersey*, Kolon Industries or Kolon Corp. would continue performing such functions, either on their own or through other entities. Moreover, the evidence does not support the conclusion that, in the absence of Kolon Global pretending to have a New York office, Kolon Corp. or another one of its subsidiaries would have engaged in the same behavior. As a result, neither Kolon Global nor Ahn, either individually or together, may serve as Kolon Industries' or Kolon Corp.'s agent in New York for jurisdictional purposes.

## CONCLUSION

For the foregoing reasons, the Court concludes that it must deny the November 7, 2012 motion for a turnover order because general jurisdiction may not be exercised over Kolon

18

Industries or Kolon Corp. in New York.  As a result, the Clerk of Court is requested to terminate

the motions pending at docket numbers 83, 95, 106, 108, and 119.  A conference with the Court

shall be held on September 24, 2013, at 4:00 PM in Courtroom 906 of the Thurgood Marshall

Courthouse.  At that conference, the Court plans to discuss the management of this matter going

forward.  With regards to the pending motions for the remaining turnover orders (Dkt. Nos. 31,

34, 38, 41), the Court plans to deny those motions without prejudice and with leave to re-file

those motions following the case management conference to be held on September 24.  If any

party objects to this administrative procedure, they shall inform the Court in writing on or before

September 4, 2013.

SO ORDERED.


Dated: August ___, 2013
       New York, New York

_____
ALISON J. NATHAN
United States District Judge

19